# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

**UNITED STATES**

**v.**

**Technical Sergeant JIMMY L. WILSON**
**United States Air Force**

**ACM 37897 (rem)**

**30 January 2014**

**____ M.J. ____**

Sentence adjudged 21 January 2011 by GCM convened at Moody Air Force Base, Georgia. Military Judge: Terry A. O'Brien.

Approved Sentence: Bad-conduct discharge, confinement for 3 months, and reduction to E-2.

Appellate Counsel for the Appellant: Captain Thomas A. Smith (argued); Colonel Patrick J. Wells; and Major Nathan A. White.

Appellate Counsel for the United States: Major Daniel J. Breen (argued); Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Lieutenant Colonel Linell A. Letendre; Major Scott C. Jansen; Major Brian C. Mason; Major Erika L. Sleger; and Gerald R. Bruce, Esquire.

Before

ROAN, HARNEY, and MITCHELL
Appellate Military Judges

UPON REMAND

This opinion is subject to editorial correction before final publication.

MITCHELL, Judge:

This case is before us on remand from our superior court. On 21 January 2011, a general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of one specification of violating a lawful order, in violation of Article 92, UCMJ, 10 U.S.C. § 892. The court sentenced the appellant to a bad-conduct

discharge, confinement for 3 months, and reduction to E-2. The convening authority approved the sentence as adjudged.

The appellant initially assigned as error that he was subjected to cruel and unusual punishment in violation of Article 55, UCMJ, 10 U.S.C. § 855. The appellant served his sentence to confinement in a local civilian jail contracted by the Air Force to house military prisoners because no local military confinement facility existed. While in confinement he was segregated from other prisoners. In an unpublished decision, we examined this alleged error and found it to be without merit. *United States v. Wilson*, ACM 37897 (A.F. Ct. Crim. App. 12 October 2012) (unpub. op.). There was evidence in the record that local confinement officials implemented the segregation so as to prevent a violation of Article 12, UCMJ, 10 U.S.C. § 812, by ensuring the appellant was never in immediate association with foreign nationals. We affirmed the findings and sentence.

Our superior court reversed our decision and remanded for consideration of the following specified issue:

> Whether Article 12, UCMJ, applies to the circumstance where an accused and/or convicted member of the armed forces is confined in immediate association with foreign nationals in a state or federal facility within the continental limits of the United States; and, whether the record in this case permits such a conclusion to be drawn without the necessity of further fact-finding.

*United States v. Wilson*, __ M.J. __ No. 13-0157/AF (Daily Journal 17 July 2013).

We ordered oral argument on this issue and received additional briefs from the parties. We conclude that Article 12, UCMJ, applies to members of the armed forces when placed in confinement in a state or federal facility within the continental United States due to an adjudged court-martial sentence.[1]

*Article 12, UCMJ*

"No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces." Article 12, UCMJ.

The plain language of the statute does not set any geographical limits to its application, so a plain reading of the statute would arguably render resorting to legislative

---

[1] When a court-martial adjudges confinement, Article 58, UCMJ, 10 U.S.C. § 858, authorizes the use of "any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States, or which the United States may be allowed to use."

history unnecessary.  *Compare United States v. Great Northern Ry. Co.*, 287 U.S. 144, 154-55 (1932) ("In aid of the process of construction we are at liberty, if the meaning be uncertain, to have recourse to the legislative history of the measure and the statement by those in charge of it during its consideration by the Congress.") *with Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1944) ("[W]e do not resort to legislative history to cloud a statutory text that is clear.") *and INS v. Cardoza-Fonseca*, 480 U.S. 421, 452-53 (1987) (Scalia, J., concurring) ("Judges interpret laws rather than reconstruct legislators' intentions.  Where the language of those laws is clear, we are not free to replace it with an unenacted legislative intent.").  Legislative history can also be used, however, to refute an assertion that a meaning contrary to the plain meaning of a statute was "intended."  *See e.g.*, *Darby v. Cisneros*, 509 U.S. 137, 147 (1993) ("Recourse to the legislative history . . . is unnecessary in light of the plain meaning of the statutory text.  Nevertheless, we consider that history briefly because both sides have spent much of their time arguing about its implications.").  Because the parties have resorted to the legislative history of Article 12, UCMJ, to argue their respective interpretations, we also examine it to inform our analysis.

*Legislative History*

In July 1948, then-Secretary of Defense James Forrestal appointed a committee to draft a uniform code of military justice.  *S. REP. No. 486*, *81st Cong.*, 1st Sess., at 4 (1949) (hereinafter "*Senate Report*") and *Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcomm. of the H. Comm. on Armed Servs.*, 81st Cong., at 596-99 (1949), *reprinted in Index and Legislative History, Uniform Code of Military Justice* (1950) (not separately paginated) (hereinafter "*House Subcommittee Hearings*").  The committee included Mr. Felix Larkin, Assistant General Counsel, Office of the Secretary of Defense, who chaired a working group of approximately 15 persons, including officer representatives of each of the services and 5 civilian lawyers with service experience.  *Senate Report*, at 4.  The new code was designed to, among others things, supersede and revise the Articles of War, including the Articles of War recently revised by amendment to the Selective Service Act of 1948.  *House Subcommittee Hearings*, at 600 (statement of Prof. Edmund Morgan, Jr.).

Several of the committee members testified during hearings before the House and Senate Armed Services Committees.  The testimony from these hearings, held between March and May of 1949, is a source of legislative history that military courts have turned to, when necessary, to resolve the meaning or scope of a provision of the code.  *See, e.g.*, *United States v. Wise*, 64 M.J. 468, 475-76 (C.A.A.F. 2007) (examining *House Subcommittee Hearings* to determine meaning of the term "immediate association" under Article 12, UCMJ); *United States v. Antonelli*, 35 M.J. 122, 124-35 (C.A.A.F. 1992) (examining *House Subcommittee Hearings* to conclude Article 121, UCMJ, 10 U.S.C. § 921, offense of larceny encompassed and consolidated what historically had been separate common law offenses); *United States v. Graham*, 16 M.J. 460,

462-63 (C.M.A. 1983) (describing discussion in *House Subcommittee Hearings* on Article 87, UCMJ, 10 U.S.C. § 887, as "cryptic" but still using the "expressed justification" of missing movement offense to determine its scope).

The legislative history of Article 12, UCMJ, reveals that, like many provisions of the code, it was based upon an existing Article of War, specifically Article of War 16 (A.W. 16). The language modeled from A.W. 16, however, was itself of recent vintage, appearing for the first time the year prior, as a result of a floor amendment, in the 1948 amendment to the Selective Service Act.[2] That provision provided: "No person subject to military law shall be confined with enemy prisoners or any other foreign nationals outside of the continental limits of the United States." *See Manual for Courts-Martial, United States*, Chapter V, ¶ 19.a. (1949 ed.).

Despite its recent enactment, A.W. 16 was not transplanted in its entirety when the committee drafted its Article 12, UCMJ, counterpart. As Mr. Larkin explained during his testimony at the House subcommittee hearings, he did not think the floor amendment to A.W. 16 was "thought through completely" and noted it was limited to confinement overseas and could be interpreted too broadly to prohibit confinement in the same building or ship, regardless of segregation. *House Subcommittee Hearings*, at 914. As shown by the following explanation during the hearings, these concerns resulted in a deliberate modification of the statutory language:

> Mr. Larkin: This article, as Mr. Smart points out, was a floor amendment, and it read a little differently as passed by the Congress last year. As it is in the Public Law 759 [amending A.W. 16], it says—

> No person subject to military law shall be confined with enemy prisoners or any other foreign nationals outside the continental limits of the United States.

> Now we have changed the wording and said—

> No member shall be placed in confinement in immediate association—

> because as it read it conceivably could cause a number of confinement difficulties.

> I do not think it was thought through completely when the floor amendment was offered. It was limited in the floor amendment to confinement overseas. The service might have a difficult time overseas if

---

[2] Prior to 1948, no Article of War addressed confinement with enemy prisoners or other foreign nationals.

they could not confine a person with enemy prisoners in that they could not even keep them in the same jail.

There may not be more than one jail or place of confinement within the area. Then they just could not restrain them or confine them at all.

We thought we kept the sense of the present law but made it a little more flexible by saying "in immediate association" which in effect would mean you could keep them in the same jail by at least segregating them in different cells. It further was proposed for the Army, with no thought of the Navy—the Navy you can visualize might have a great difficulty aboard ship when they captured an enemy vessel and took foreign nationals.

Then they could not keep any offender of their own in the same brig on ship board. We have changed that. *And we have deleted, if you will notice, "outside the continental limits" and made it apply everyplace*, but prohibit incarceration in close association but not with because "with" has the connotation that you could not keep them in the same prison and there may be only one. They are the only differences between what is in the law now and this article.

*House Subcommittee Hearings*, at 914-15 (emphasis added).

In light of the plain meaning of Article 12, UCMJ, which contains no geographical limitation whatsoever, and made further clear by its legislative history, we conclude that Article 12, UCMJ, applies to members of the armed forces "everyplace," to include confinement facilities within the continental United States.

*Relationship between Article 12, UCMJ, and Article 58(a), UCMJ*

Although the Government initially argued that Article 12, UCMJ, proscribes only confinement in immediate association with "enemy" foreign nationals, during oral argument the Government also contended that Article 58(a), UCMJ, 10 U.S.C. § 858(a), takes precedence over Article 12, UCMJ, such that Article 12, UCMJ, has no applicability to military members confined outside of the custody of the armed forces. Article 58(a), UCMJ, provides:

Under such instructions as the Secretary concerned may prescribe, a sentence of confinement adjudged by a court-martial or other military tribunal, whether or not the sentence includes discharge or dismissal, and whether or not the discharge or dismissal has been executed, may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution

under the control of the United States, or which the United States may be allowed to use. Persons so confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State, District of Columbia, or place in which the institution is situated.

In support of this position, the Government cites to an unpublished order from the United States Court of Appeals for the District of Columbia, *Webber v. Bureau of Prisons*, No. 02-5113, 2002 WL 31045957 (D.C. Cir. Apr. 4, 2002), which held:

Article 58 of the Uniform Code of Military Justice states categorically that military prisoners housed in Bureau of Prisons facilities shall be subject to the same treatment as their civilian counterparts. *See* 10 U.S.C. § 858(a). It does not create an exception concerning confinement with foreign nationals, nor does Article 12 of the Code provide that its prohibition against such confinement survives Article 58's same-treatment rule. *See id.* § 812. Thus, by its terms, Article 58 trumps Article 12 . . . .

We disagree that the general "same discipline and treatment" provision of Article 58(a), UCMJ, operates to render Article 12, UCMJ, a nullity for military members serving a court-martial sentence in a facility not under military control. First, we do not believe the unique requirements of Article 12, UCMJ, are appropriately characterized as a matter of "discipline and treatment" falling within the parameters of Article 58(a), UCMJ. Second, even if immediate proximity to enemy prisoners or other foreign nationals were considered "discipline and treatment," there is no reason the general rule of Article 58(a), UCMJ, should trump the specific prohibition of Article 12, UCMJ. To the contrary, applying ordinary canons of statutory construction, the more specific provision trumps the general one. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general."). Consequently, even if Articles 12 and 58(a), UCMJ, were read as contradictory, we would nevertheless conclude that Article 12, UCMJ, with its specific proscription of confining military members in immediate association with enemy prisoners or other foreign nationals, should be construed as an exception to the general "same-treatment" rule.

Article 12, UCMJ, applies only to "member[s] of the armed forces." Although Article 58(a) expressly permits confinement of military members outside of military custody prior to the execution of a discharge, the execution of such a discharge severs not only their status as members of the armed forces, but also, unlike members serving confinement in military custody, ends their being subject to the code. *See* Article 2(a)(7), UCMJ, 10 U.S.C. 802(a)(7). Once a military member is no longer subject to the code, the statutory protections of Article 12, UCMJ, no longer apply. In the

present case, the appellant was still subject to the code awaiting appellate review of his case when he was segregated for the evidenced reason of preventing an Article 12, UCMJ, violation.

*Application of Article 12, UCMJ*

On 21 January 2011, a general court-martial sentenced the appellant, inter alia, to 3 months of confinement. On 22 January 2011, trial defense counsel submitted a request for deferment of confinement and reduction in grade to the convening authority. Trial defense counsel argued that confinement should be deferred because the appellant would be held in "de-facto solitary confinement" while in the civilian jail. On 21 March 2011, the appellant submitted a letter to the convening authority describing his conditions of confinement: "Due to the fact that I am from Moody AFB, I spend 23 hours a day locked in isolated confinement." His counsel argued for clemency based in part on "the fact that [Airman] Wilson ha[d] been held in solitary confinement while in jail." He also attached an affidavit from the Cook County Jail Administrator. In the affidavit, the administrator declared, "The Cook County Jail has no system of identifying foreign nationals," and as of "[9 December 2010], the [jail] will no longer allow Moody inmates to go into general population. They will spend their time [t]here in an isolation cell; they will still have every privilege as other inmates with the exclusion of television." The convening authority denied the appellant's request and approved the adjudged sentence.

*Analysis*

We review de novo whether an appellant's post-trial confinement violates Article 12, UCMJ. *United States v. Wise*, 64 M.J. at 474. "A prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *Id.* at 469 (citing *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)). This administrative exhaustion requirement furthers two related goals: the resolution of the issue at the lowest level and the development of the record for later appellate review. *Id.* at 471 (citing *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)). "Since a prime purpose of ensuring administrative exhaustion is the prompt amelioration of a prisoner's conditions of confinement, courts have required that these complaints be made while an appellant is incarcerated." *Wise*, 64 M.J. at 471. Unless there are some unusual or egregious circumstances, an appellant with a complaint about post-trial confinement conditions must show he has exhausted the prisoner-grievance system at the confinement facility and that he has petitioned for relief under Article 138, UCMJ. *Id.* (citing *White*, 54 M.J. at 472).

The appellant never sought administrative relief or even alleged that he was ever in immediate association with any foreign national. His complaints were instead directed towards the fact he was placed in solitary confinement. The appellant has not raised an allegation of a violation of Article 12, UCMJ, in any of his appellate pleadings before this

court.[3]    Relief is not warranted for the following reasons: his failure to exhaust administrative remedies, the lack of unusual or egregious circumstances, and his lack of a request for relief for any alleged Article 12, UCMJ, violation.[4]

*Limitations on Remand*

The appellant seeks to renew his argument that his post-trial confinement condition of 23 hours a day in administrative segregation constituted cruel and unusual punishment under the Eighth Amendment.[5]  The remand to this Court was limited to the specified issue of the application of Article 12, UCMJ, and whether any further fact-finding was required on the Article 12, UCMJ, issue.  On a remand, we are limited to only taking action that conforms to the issue on remand.  *United States v. Riley*, 55 M.J. 185, 188 (C.A.A.F. 2001).  Therefore, we are not permitted to address the Eighth Amendment argument again.

For the sake of clarity to all the parties, we summarize our holding.  Our earlier opinion concluded that the appellant had not demonstrated the prison officials acted with deliberate indifference and therefore, did not prevail on his Eighth Amendment claim.  We relied on the affidavit, *submitted by the appellant*, which implied Cook County Jail officials decided to place military prisoners in isolation cells in order to prevent violations of Article 12, UCMJ, since they did not have a method of identifying foreign nationals.  We conclude for the reasons set forth in our first opinion that the appellant in this case does not prevail on his claim of cruel and unusual punishment.  *United States v. Wilson*, ACM 37897 (A. F. Ct. Crim. App. 12 October 2012) (unpub. op.).

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.  Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000).

---

[3] At oral argument, appellant's counsel specifically rejected the argument that Article 12, UCMJ, 10 U.S.C. § 812, was violated.

[4] Furthermore our superior court has held that a "single strand of concertina wire represents a real boundary" which for Article 12, UCMJ, analysis prevents "immediate association." *United States v. Wise*,  64 M.J. 468, 474.  We are therefore confident that being held in an isolation cell prevents any "immediate association" with foreign nationals.

[5] U.S. CONST. amend. VIII.

Accordingly, the approved findings and sentence are

AFFIRMED.

 FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 37897 (rem)