**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Staff Sergeant DAVID D.B. LUCKADO**
**United States Air Force**

**ACM 37962 (recon)**

**15 July 2014**

Sentence adjudged 8 April 2011 by GCM convened at Moody Air Force Base, Georgia. Military Judge: Donald R. Eller, Jr.

Approved sentence: Dishonorable discharge, confinement for 18 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the appellant: Major Daniel E. Schoeni; Captain Christopher James; and Captain Michael Schrama.

Appellate Counsel for the United States: Lieutenant Colonel Linell A. Letendre; Major Daniel J. Breen; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT
UPON RECONSIDERATION

This opinion is subject to editorial correction before final release.

MITCHELL, Senior Judge:

The appellant was convicted by a general court-martial composed of officer members, contrary to his pleas, of three specifications of aggravated sexual contact with a child, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The adjudged and approved

sentence consisted of a dishonorable discharge, confinement for 18 years, reduction to E-1, and total forfeiture of all pay and allowances.[1]

*Procedural History*

On 25 June 2013, the Secretary of Defense, "[p]ursuant to [his] authority under title 5, United States Code, section 3101 *et seq*.," issued a memorandum that "appoint[ed] Mr. Laurence M. Soybel, a civilian employee of the Department of the Air Force, to serve as appellate military judge on the Air Force Court of Criminal Appeals." Memorandum from Sec'y of Def. Chuck Hagel for Sec'y of the Air Force Eric Fanning, (25 June 2013).

When the appellant's case was initially before us, the appellant raised three issues: (1) the military judge abandoned his impartial role by asking questions that helped the Government meet its burden of proof on a motion to suppress statements made by the victim to a medical provider; (2) the appellant was subjected to cruel and unusual punishment when, in order to prevent Article 12, UCMJ, 10 U.S.C. § 812 violations, he was held in isolation in a civilian confinement facility; and (3) his rights under Article 12, UCMJ, were violated when he was confined in immediate association with a foreign national for 19 days after his release from solitary confinement.

On 1 August 2013, we issued a decision affirming the approved findings and sentence in the appellant's case. *United States v. Luckado*, ACM 37962 (A.F. Ct. Crim. App. 1 August 2013) (unpub. op.). Pursuant to his appointment by the Secretary of Defense, Mr. Soybel was a member of the panel. The appellant moved our superior court to vacate the decision on the basis of Mr. Soybel's participation, and on 31 October 2013, our superior court converted the appellant's motion to vacate, which was pending before our court, into a motion for reconsideration. On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding the Secretary of Defense did not have the legislative authority to appoint appellate military judges, and his appointment of Mr. Soybel to this Court was "invalid and of no effect."

In light of *Janssen*, we granted the motion for reconsideration on 29 April 2014 and permitted the appellant to file a supplemental assignment of errors. The appellant submitted a supplemental assignment of errors averring an additional issue: that he is entitled to relief due to excessive post-trial processing delays. With a properly constituted panel, we have reviewed the appellant's case, to include the appellant's previous and current filings and the previous opinions issued by this Court. Finding no

---

[1] We note the charges and specifications which were withdrawn or dismissed after arraignment are not reflected on the court-martial order (CMO). Promulgation of a corrected CMO, properly reflecting the disposition of these charges and specifications, is hereby ordered.

error that materially prejudices a substantial right of the appellant, we affirm the findings and sentence.

*Background*

The appellant was a staff sergeant with more than 14 years of service, including a deployment to Iraq in January 2010. He shared custody of his 6-year-old daughter, SL, and his 12-year-old son with his ex-wife, Ms. SA. In January 2010, Ms. SA caught SL "touching herself." She saw similar behavior on several other occasions over the following months. During this time, Ms. SA told SL that this was not appropriate behavior for children. Ms. SA told SL that if she was doing this because someone had touched her that person would go to jail, but if SL was doing this on her own then she would be punished. On 23 May 2010, Ms. SA walked into SL's room and found her touching herself with her hand inside her pants. Ms. SA was angry and left the room for a belt to punish SL. When Ms. SA returned to SL's room, SL exclaimed that "I only do it because he did it when he was here" and "I only do it because Daddy did it when he was here."

After this initial report, a law enforcement investigation began. As part of the investigation, Ms. SA received a referral to have SL examined by Dr. JL, a pediatrician with the Children's Advocacy Center in Macon, Georgia. On 22 July 2010, Dr. JL examined SL and obtained a medical history from her regarding the abuse.

A panel of officer members convicted the appellant of three of the specifications and acquitted him of one specification.[2]

In his unsworn statement to the members, the appellant raised the issue that he would serve his initial confinement at the Cook County Jail because Moody Air Force Base (AFB) did not have a military confinement facility. He asked the members to consider that he would be in an "isolation cell" to prevent his contact with "non-American inmates." He also submitted this same unsworn statement in his clemency submission to the convening authority.

The appellant was confined at Cook County Jail from 8 April to 3 May 2011 before he was transferred to a military confinement facility. He was in segregation for the first week and was then transferred to general population for the remainder of his time at the county jail. He alleges that during his time with the general population there was a

---

[2] Several of the original charges and specifications were dismissed upon motion or withdrawn by the Government prior to the members closing for deliberations. The military judge granted a defense motion for multiplicity and dismissed Specification 3 of Charge II. After arraignment, the Government withdrew Charge III and its specifications. The military judge sua sponte raised a Rule for Courts-Martial 917 motion and directed a finding of Not Guilty to Charge I and its Specification, Specification 5 of Charge II, and to the excepted language of "on divers occasions" from Specification 3 and Specification 4 of Charge II.

Mexican national who was also imprisoned and in the same pod, but he does not recall the other prisoner's name.[3]

*Partiality of Military Judge*

Trial counsel filed a motion in limine seeking the admission of statements made by SL to Dr. JL pursuant to Mil. R. Evid. 803(4) as statements made for purposes of medical diagnosis or treatment. Trial defense counsel objected to the statements as inadmissible hearsay. At the motion hearing, both Ms. SA and Dr. JL were called as witnesses. SL did not testify at the motion hearing.

SL's mother, Ms. SA, testified that although the consultation with the pediatrician was arranged through law enforcement officials at Moody AFB, she was worried about possible injury to her daughter's reproductive system and was seeking a medical evaluation. Prior to the appointment, she explained to her daughter that she was going to see a female doctor who would conduct a physical examination and could help her if she was hurt. Ms. SA took her daughter to an appointment with Dr. JL, a local pediatrician and medical director of the Children's Advocacy Center. Upon arrival, Dr. JL explained to SL that she would be conducting a physical exam and would be examining her "bottom."

In response to trial counsel's questions, Dr. JL explained that she asks patients for a medical history to aid in completing the physical exam. After Dr. JL was questioned by counsel for each side, the military judge asked clarifying questions. The military judge read each statement to her, asked if SL made the statement, and then asked why the statement was necessary for a medical provider. As he explained, "What I am just trying to figure out is why is this statement important to a medical provider." For example:

> Q. . . . From a medical provider's standpoint, how is that useful information in terms of determining how to examine or treat the child?
>
> A: None at all. . . .

When assessing a military judge's impartiality, we evaluate, based on the entire trial, whether "a court-martial's legality, fairness, and impartiality were put into doubt from the objective viewpoint of a reasonable person." *United States v. Merritt*, 71 M.J. 699, 706 (A.F. Ct. Crim. App. 2012), *rev'd in part on other grounds*, 72 M.J. 483 (C.A.A.F. 2013) (citing *United States v. Ramos*, 42 M.J. 392, 396 (C.A.A.F. 1995)). We presume a military judge's impartiality, the presumption is especially strong in the

---

[3] The Court notes that the appellant's assignment of errors states that the appellant was incarcerated in the Cook County Jail for 34 days, from 17 June to 20 July 2010. Additionally, the appellant states that this confinement was "pretrial." A review of the record of trial discloses the appellant was incarcerated in the Cook County facility for 26 days from 8 April to 3 May 2011. Additionally, all of the appellant's confinement was post-trial.

context of judicial proceedings, and we require the appellant to clear a "high hurdle" when alleging bias. *Id.* (citing *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001)). "The military judge may be an active participant in the proceedings, but, must take care not to become an advocate for either party. A defense failure to object at trial to alleged partisan action by the military judge 'may present an inference that the defense believed that the military judge remained impartial.'" *Id.* (quoting *United States v. Foster*, 64 M.J. 331, 332-33 (C.A.A.F. 2007)).

Here, trial defense counsel did not object to the military judge's questions. The military judge was clearly trying to determine the facts so he could render a ruling on this pretrial motion. As a result of the military judge's questions, he ruled that two of the statements and a portion of a third statement were inadmissible. Even looking solely at this one part of the trial, there is no question that an objective reasonable spectator would have no doubt about the fairness and legality of the proceedings and the impartiality of the military judge. When looking at the whole context of the trial, to include the military judge's ruling dismissing a specification as multiplicious, granting a motion to suppress evidence of the appellant's possession of a computer file with a title suggestive of child pornography, granting the two defense challenges for cause over trial counsel objection, and his sua sponte Rule for Courts-Martial 917 rulings, it is clear the military judge was impartial and directly responsible for a court-martial that was objectively legal, fair, and impartial.

## Cruel and Unusual Punishment

The appellant argues he is entitled to relief for "cruel and unusual" punishment because he was held in an isolation cell during his first week at Cook County Jail. The appellant complains he did not have the same privileges as those in the general population, as he was required to sleep on a concrete bench without a mattress and did not have a television, a window, or access to recreation.

We review de novo whether the facts alleged constitute cruel and unusual punishment under the Eighth Amendment.[4] *United States v. Lovett*, 63 M.J. 211 (C.A.A.F. 2006). This is also true for violations alleged under Article 55, UCMJ, 10 U.S.C. § 855.

To prevail on this type of claim under an Eighth Amendment analysis, the appellant must show: (1) that prison officials committed a sufficiently serious act or omission that denied him necessities; (2) that the act or omission resulted from a culpable state of mind reflecting deliberate indifference to his health and safety; and (3) that he has exhausted administrative remedies. *Lovett*, 63 M.J. at 215.

---

[4] U.S. CONST. amend. VIII.

This Court has previously addressed post-trial confinement of Airmen from Moody AFB, which does not have its own confinement facility, at local facilities and claims of cruel and unusual punishment for time in isolation. *See United States v. Wilson*, 73 M.J. 529 (rem) (A.F. Ct. Crim. App. 2014); *United States v. Simmons*, ACM 37967 (A.F. Ct. Crim. App. 27 June 2012) (unpub. op.). The appellant's claim fails on two fronts. First, solitary confinement, and its inherently restrictive conditions, does not alone rise to the level of deprivation of life's necessities and is not a violation of the Eighth Amendment. *United States v. Avila*, 53 M.J. 99 (C.A.A.F 2000). Second, the appellant fails to establish the Air Force or local jail officials were deliberately indifferent to his health and safety. The record indicates that time in isolation was determined in part by the Cook County Jail in order to verify that there were no foreign nationals present before transferring Airmen to the general population. *See Wilson*, 73 M.J. at 535.

*Confinement with Foreign Nationals*

After approximately one week in solitary confinement, the appellant was placed in the general population at Cook County Jail until his transfer to a military confinement facility on 3 May 2011. The appellant alleges that a Mexican national was in the same pod, shared the same common areas, and was frequently in the appellant's sleeping quarters playing cards and chess with inmates who shared the same sleeping quarters as the appellant. The appellant did not raise this as an issue in clemency nor is there any evidence that he complained about this condition to the local confinement officials.[5]

Article 12, UCMJ, 10 U.S.C. § 812, states: "No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces." We have previously declared, "[i]n light of the plain meaning of Article 12, UCMJ, which contains no geographical limitation whatsoever, and made further clear by its legislative history, we conclude that Article 12, UCMJ, applies to members of the armed forces 'everyplace,' to include confinement facilities within the continental United States." *Wilson*, 73 M.J. at 533. We review de novo whether an appellant's post-trial confinement violates Article 12, UCMJ. *United States v. Wise*, 64 M.J. 468, 473–74 (C.A.A.F. 2007).

Appellate courts have long required prisoners to seek administrative resolution of their grievances regarding post-trial confinement, including the prisoner grievance system of the confinement facility, prior to judicial intercession. *Id*. at 469 (citing *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)). This administrative exhaustion requirement furthers two related goals: (1) the prompt resolution of the conditions of confinement at the lowest level and (2) development of the record for later appellate review. *Wise*, 64 M.J. at 471 (citing *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)).

---

[5] Appellate defense counsel alleges the appellant and his trial defense counsel included a complaint about Article 12, UCMJ, 10 U.S.C. § 812, violations in his clemency; however the clemency request only includes information about solitary confinement in order to prevent Article 12, UCMJ, violations.

Because "a prime purpose of ensuring administrative exhaustion is the prompt amelioration of a prisoner's conditions of confinement, courts have required that these complaints be made while an appellant is incarcerated." *Wise*, 64 M.J. at 471. Unless there are some unusual or egregious circumstances, an appellant with a complaint about post-trial confinement conditions must show he has exhausted the prisoner-grievance system at the confinement facility and that he has petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938. *Id.* (citing *White*, 54 M.J. at 472).

The appellant was clearly aware of Article 12, UCMJ, and its prohibition, as he included a reference to it in his written unsworn statement at trial: "During my time at Cook County Jail, I will be in a [sic] isolation cell so that I do not accidentally come into contact with non-American inmates. As I understand it, it would violate the law for military inmates to have contact with non-Americans." The appellant also included this same unsworn statement in his clemency request. Yet the appellant did not make any complaints about a violation of Article 12, UCMJ, in his clemency petition even though his clemency request was submitted after he was transferred to the United States Disciplinary Barracks at Fort Leavenworth, Kansas. The appellant waited until appellate review before he raised the issue. He did not notify anyone in his chain of command or at the confinement facility of the Article 12, UCMJ, violation at the time it was allegedly occurring, nor did he file a grievance or make an Article 138, UCMJ, complaint. As a result, the Air Force was unable to investigate the claims, make a record of the facts, or immediately correct the situation, if warranted. With these facts, we find no "unusual or egregious circumstance" to excuse the appellant's failure to pursue available administrative remedies. *See Wise*, 64 M.J. at 471. Accordingly, relief for the appellant's claim of a violation of Article 12, UCMJ, is not warranted.

*Appellate Review Time Standards*

We review de novo "[w]hether an appellant has been denied [his] due process right to a speedy post-trial review . . . and whether any constitutional error is harmless beyond a reasonable doubt." *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before this Court. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The *Moreno* standards continue to apply as a case remains in the appellate process. *United States v. Mackie*, 72 M.J. 135, 135–36 (C.A.A.F. 2013). The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this Court and our superior court is within the 18-month standard. *Id.* at 136; *United States v. Roach*, 69 M.J. 17 (C.A.A.F. 2010). However, when a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Moreno*. *See United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and

(4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see also Barker*, 507 U.S. at 530.

This case was originally docketed for appellate review on 5 January 2012. After considering the briefs from appellate counsel, this Court rendered its first decision on 1 August 2013. The overall delay of more than 540 days between the time of docketing and review by this Court is facially unreasonable. As stated supra, our superior court recently decided that one of the judges who participated in that decision was not properly appointed. *See Janssen*, 73 M.J. at 222. Accordingly, we have considered the appellant's court-martial before a properly constituted panel and issue this decision. The time between our superior court's action and this decision did not exceed 18 months; therefore the *Moreno* presumption of unreasonable delay is not triggered for this period of time. *See Mackie*, 72 M.J. at 136.

We analyze the *Barker* factors for the delay leading up to our first decision. The first factor weighs in favor of the appellant; the length of the delay between docketing and our first decision is presumptively unreasonable and therefore satisfies the first *Barker* factor. *Moreno*, 63 M.J. at 142. The second factor weighs in favor of the appellant. While the delay may have been related to the number of personnel assigned to the court, we are mindful of our superior court's emphasis that the established benchmarks do not create a free period, and "personnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay." *Arriaga*, 70 M.J. at 57. Third, although the Government carries the burden of primary responsibility for speedy post-trial processing, *United States v. Bodkins*, 60 M.J. 322, 323–24 (C.A.A.F. 2004), the appellant did not assert his right to speedy post-trial processing until 19 May 2014 in his supplemental assignment of error. Even though we sua sponte addressed the presumptively unreasonable delay in our first opinion, the appellant did not raise this as an issue in his petition for grant of review. His 24 October 2013 submission to our superior court did not include a demand for speedy appellate review. Finally, on the fourth factor, the appellant fails to demonstrate any prejudice in this case. "An appellant must demonstrate a particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Arriaga*, 70 M.J. at 58 (internal quotations marks and citations omitted). Here, the appellant has not done so.

When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case to not be so

egregious as to adversely affect the public's perception of fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

While we find the post-trial delay was harmless, that does not end our analysis. Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy and Marine Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay; the length and complexity of the record; the offenses involved; and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. We find there was no bad faith or gross negligence in the post-trial processing in any stage of the appellate review of this matter. The reason for the delay between 1 August 2013 and our opinion today was to allow this Court and our superior court to fully consider a constitutional issue of first impression about whether the Secretary of Defense has the authority under the Appointments Clause[6] to appoint civilian employees to the service courts of criminal appeals. We conclude sentence relief under Article 66, UCMJ, is not warranted.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ. Accordingly, the approved findings and sentence are

AFFIRMED.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[6] U.S. CONST. art. II, § 2, cl. 2