# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39399**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Nolan M. DAMM**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 21 June 2019

———————————

*Military Judge:* Jennifer E. Powell.

*Approved sentence:* Dishonorable discharge, confinement for 18 months, reduction to E-1, and a reprimand. Sentence adjudged 3 October 2017 by GCM convened at Holloman Air Force Base, New Mexico.

*For Appellant:* Major Christopher C. Newton, USAF; Major Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Judge KEY delivered the opinion of the court, in which Senior Judge JOHNSON and Judge POSCH joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

KEY, Judge:

A general court-martial composed of a military judge convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement, of 13 specifications pertaining to controlled substances, including: divers instances of

possessing—with intent to distribute—3,4-methylenedioxymethamphetamine (MDMA or "ecstasy"), lysergic acid diethylamide (LSD), and alprazolam (Xanax); divers instances of importing MDMA; divers instances of distributing psilocybin and cocaine; divers instances of using MDMA, cocaine, and marijuana; and a single instance of using LSD and dimethyltryptamine (DMT), each, all in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1] The court-martial sentenced Appellant to a dishonorable discharge, confinement for 18 months, reduction to the grade of E-1, and a reprimand. The convening authority approved the sentence as adjudged.

Appellant raises the following issues on appeal: (1) whether he is entitled to sentence relief on account of the conditions of the first 28 days of his post-trial confinement when he was housed at a civilian confinement facility, and (2) whether the convening authority's staff judge advocate (SJA) provided inadequate advice to the convening authority in the addendum to the staff judge advocate's recommendation (SJAR) prior to action. We find no error and affirm the findings and sentence.

# I. BACKGROUND

In April 2016, Homeland Security Investigations agents intercepted a package from the United States Postal Service addressed to Appellant. The package, which originated in Germany, contained 103 MDMA tablets. The ensuing investigation uncovered Appellant's wide-reaching involvement with controlled substances, which included him buying drugs online and then both using them and selling them to other military members and civilians.

Once convicted and sentenced on 3 October 2017, Appellant was ordered into confinement and incarcerated at New Mexico's Otero County Prison Facility (Otero County) for 28 days until he was transferred to a military confinement facility on 30 October 2017. While at Otero County, Appellant was housed in the facility's Restricted Housing Unit. According to Appellant's confinement order, Appellant arrived at Otero County shortly before midnight on Tuesday, 3 October 2017.

At some point on Wednesday, 4 October 2017, Appellant was issued two sets of prison uniforms, to include two pairs of underwear. Laundry service at Otero County is available Monday through Friday, but not on Saturdays or

---

[1] All references in this opinion to the Uniform Code of Military Justice and Rules for Courts-Martial are to the *Manual for Courts-Martial*, *United States* (2016 ed.), App. 2, pt. II.

Sundays. Appellant was also issued a bar of soap, toothbrush, toothpaste, and two rolls of toilet paper.

During his time at Otero County, Appellant was housed in a cell by himself. The door to his cell contained a small window, through which Appellant was provided food on a tray for him to consume in his cell. The slot was also used to put handcuffs on Appellant, as he was restrained when escorted to the shower. Military prisoners at Otero County are allowed showers three times a week—Monday, Wednesday, and Friday.

Because he was in the Restricted Housing Unit, Appellant was allowed outside of his cell for recreation purposes five hours per week—one hour a day, Monday through Friday. Appellant was not allowed outside of his cell on weekends. Appellant's recreation time could be spent either in an inside room with a television and a telephone, or outside in an open-air cell. The open-air recreation cell consisted of three brick walls, a fenced fourth wall, and a fenced ceiling. Appellant was not permitted to interact with other inmates during his recreation time, and his recreation time was spent alone.

Appellant's cell was lit by fluorescent lights that were dimmed but not completely turned off at night.

Otero County assigns different colors of prisoner uniforms depending on the prisoners' status and the nature of the offense for which they were convicted. By virtue of being a military prisoner, Appellant's uniform was striped, black and white.

On 12 January 2018—more than two months after being transferred to a military confinement facility—Appellant submitted matters in clemency to the convening authority, asserting his confinement conditions violated "established case law" and provisions of Air Force Instruction (AFI) 31-105, *Air Force Corrections System* (15 Jun. 2015, as amended by AFGM 2017-01, 28 Jun. 2017). In this submission, Appellant provided a memorandum in which he complained that he was unable to have laundry done the first four days of his confinement; there were ants in his cell; the showers "had only scalding hot water several times;" he was not able to exercise his commissary privileges for the first eight days, which meant he had no deodorant and could not make phone calls during that time; and no one from his unit visited him. Appellant's trial defense counsel submitted a memorandum supporting Appellant's clemency request in which he complained of these confinement conditions and added that Appellant would have to walk by the area where child sex offenders were confined on his way to the shower. Appellant's trial defense counsel asked the convening authority to approve a "reduced service characterization and a lessened term of confinement."

The same day Appellant submitted his matters in clemency, the convening authority's SJA signed an addendum to the SJAR, advising in relevant part:

> The defense alleges legal error in that, for 28 days of [Appellant]'s post-trial confinement at Otero County Prison Facility, he was held in violation of established case law and Air Force Instruction 31-105, *Air Force Corrections System*, by being placed in administrative segregation. I considered carefully this allegation of error, and find it to be without merit.

The SJA recommended the convening authority approve the sentence as adjudged, which the convening authority did.

On appeal, Appellant argues the conditions of his confinement warrant relief. Appellant submitted a declaration reiterating the complaints he made during the clemency process, and concludes:

> The 28 days I spent in administrative segregation caused me terrible stress. I felt humiliated being singled out by other inmates due to my prison uniform being different and having to walk by registered sex offenders when I went to shower. I had virtually no human interaction, spent nearly all of the time in my cell, and for at least awhile [sic], was not able to make phone calls. It was the worst experience of my life.

In response to Appellant's appeal, the Government obtained an affidavit from Otero County's chief of security, Captain (Capt) RO, who disputes several of Appellant's claims. Regarding Appellant's assertion he was not permitted to have his clothes washed for his first four days at Otero County, Capt RO says Appellant was afforded the opportunity to send his clothing out for laundry beginning Thursday, 5 October 2017, but that laundry service was unavailable on weekends, to include 7–8 October 2017.

Regarding Appellant's complaint he was not given phone access or commissary privileges for the first eight days, thereby preventing him from purchasing deodorant, Capt RO asserts Appellant arrived with $100, which was deposited into his account. Because Appellant was housed in the Restricted Housing Unit, Appellant was allowed to order commissary items on Wednesdays, with the delivery of those items scheduled for the following Tuesdays. Capt RO states in his declaration that inmates are provided telephone access daily, Monday through Friday, and that Appellant both was given access to a telephone on 4 October 2017 and attempted to place a call on 6 October 2017.

Capt RO asserts all military inmates are housed in the Restricted Housing Unit "[d]ue to the complexity of the multi-agency prison facility." Lieutenant Colonel (Lt Col) TC, the Holloman Air Force Base SJA at the time of

Appellant's incarceration at Otero County, also provided a declaration in which he explains that military prisoners were placed in the Restricted Housing Unit to ensure they are not "commingled with foreign nationals."[2]

On appeal, Appellant argues he did not file any previous complaints about his confinement, whether via Article 138, UCMJ, 10 U.S.C. § 938, or a prison grievance system, but that "the conditions were known to the Government due to prior cases." Appellant argues filing an Article 138, UCMJ, complaint would have been "futile" in this case due to Appellant's command sending him to Otero County in spite of their knowledge of Otero County's policies.[3]

## II. DISCUSSION

### A. Confinement Conditions

Appellant argues his confinement conditions at Otero County were cruel and unusual under the Eighth Amendment to the United States Constitution[4] and Article 55, UCMJ, 10 U.S.C. § 855. He further argues those conditions violated Article 58, UCMJ, 10 U.S.C. § 858, because he was treated differently from civilian confinees at Otero County and not in accordance with Air Force guidance. Finally, Appellant argues that even in the absence of an Eighth Amendment or Article 55 violation, his confinement conditions rendered his sentence inappropriately severe, warranting relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c).

To the extent there are contradictions between Appellant's declaration and those of Lt Col TC and Capt RO, we considered whether a post-trial evidentiary hearing was required to resolve a factual dispute. *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). We are convinced such a hearing is unnecessary. Even if we resolve the contradictions in Appellant's favor, the alleged conditions would not result in our granting relief. *Id.*

---

[2] In his declaration, Lt Col TC refers to the Restricted Housing Unit as "the administrative segregation unit."

[3] In support of this contention, Appellant submitted clemency matters from the cases of three other Airmen who were held in similar conditions at Otero County during 2017. All three submissions complained of the conditions, and all three were submitted to the same special court-martial convening authority who was Appellant's wing commander.

[4] U.S. CONST. amend. VIII.

**1. Eighth Amendment and Article 55, UCMJ—Cruel and Unusual Punishment**

We review de novo whether an appellant has been subjected to impermissible post-trial confinement conditions in violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)). Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply "the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, except in circumstances where . . . legislative intent to provide greater protections under [Article 55]" is apparent. *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (citation omitted). "[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). As the Supreme Court has explained, "[t]he Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

A violation of the Eighth Amendment is shown by demonstrating:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [an appellant]'s health and safety; and (3) that [an appellant] "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ . . . ."

*Lovett*, 63 M.J. at 215 (footnotes omitted) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)).

Solitary confinement[5] is not a *per se* Eighth Amendment violation. *Avila*, 53 M.J. at 101 (citing *Sostre v. McGinnis*, 442 F.2d 178, 192 (2d Cir. 1971)).

---

[5] The Government challenges Appellant's assertion he was placed in "solitary confinement." Our review of case law has failed to identify a consistent or useful definition of "solitary confinement." It also appears the term has largely fallen out of favor in the corrections community, likely due to its imprecision and concern about the perceptions and controversy the term carries with it. *See, e.g.*, U.S. Dep't of Justice, Report and Recommendations Concerning the Use of Restrictive Housing, Final Report (2016); Natasha A. Frost & Carlos E. Monteiro, Administrative Segregation in

*(Footnote continues on next page)*

Rather, the totality of the circumstances of the confinement conditions are considered in determining whether a "sufficiently serious" deprivation under the Eighth Amendment has been shown. *Id.* at 102. Noncompliance with service regulations may support a finding of such deprivation, "but is not determinative of the issue of punishment." *Id.* (citation omitted).

"[A] prisoner must seek administrative relief prior to invoking judicial intervention" with respect to concerns about post-trial confinement conditions. *Wise*, 64 M.J. at 471 (alteration in original) (quoting *White*, 54 M.J. at 472). "This requirement 'promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review].'" *Id.* (alterations in original) (quoting *Miller*, 46 M.J. at 250); *see also United States v. McPherson*, 73 M.J. 393, 397 (C.A.A.F. 2014). "Absent some unusual or egregious circumstance," an appellant must both exhaust the grievance system at the confinement facility as well as petition for relief under Article 138, UCMJ. *Wise*, 64 M.J. at 469 (quoting *White*, 54 M.J. at 472).

In this case, Appellant concedes he did not attempt to seek administrative relief regarding his confinement conditions. Appellant's claim that doing so would have been "futile" is both conclusory and speculative. Without presenting his claims to either the confinement facility or his chain of command, we have no way to determine what remedial action—if any—might have been taken. Had remedial action not been taken, we would have a more developed record that would explain the circumstances. Although we acknowledge Appellant may have viewed any attempt at securing relief to be futile, we are unwilling to reach this conclusion, especially considering that certain aspects of his complaints (e.g., lack of commissary privileges, scalding shower water, and access to a phone) are of the sort ripe for action by confinement officials at the time the problems presented. Similarly, had Appellant alerted his chain of command as to his specific concerns about being placed in the Restricted Housing Unit at a time when his command could have taken meaningful action, Appellant's command may have sought an exception to the policy of placing military members in that unit, identified an alternative confinement facility, or taken other corrective action. Whether his command would have taken such action or how his command would have justified not taking such action are questions we cannot answer because Appellant did not raise his concerns until after he had been released from Otero County. Far

---

U.S. Prisons, Nat'l Inst. of Justice, NCJ 249749 (2016). We focus on the attributes of Appellant's confinement rather than the title applied to it.

from exhausting the prisoner-grievance system and the Article 138, UCMJ, complaint process, Appellant did not attempt to utilize either. In failing to do so, Appellant deprived both Otero County and his command the opportunity to address his concerns while he was suffering them. We find no "unusual or egregious circumstance" excusing Appellant's failure to exhaust his administrative remedies. *See Wise*, 64 M.J. at 471). Therefore, Appellant is entitled to no relief under either the Eighth Amendment or Article 55.

### 2. Article 58, UCMJ—Execution of Confinement

Under Article 58(a), UCMJ, sentences to confinement may be served in military or non-military correctional institutions "[u]nder such instructions as the Secretary concerned may prescribe." 10 U.S.C. § 858. Military members incarcerated in non-military institutions "are subject to the same discipline and treatment" as non-military inmates. *Id*. Our superior court has held the prohibition against commingling military prisoners with foreign nationals under Article 12, UCMJ, is not inconsistent with Article 58(a) requirements, and "[m]ilitary confinees can—and must—receive treatment equal to civilians confined in the same institution, while being confined separately from foreign nationals." *McPherson*, 73 M.J. at 396.

As with alleged violations of the Eighth Amendment and Article 55, prisoners must first exhaust administrative remedies before invoking judicial intervention to remedy alleged violations of Article 58(a). *See, e.g.*, *United States v. Lemburg*, No. ACM 39261, 2018 CCA LEXIS 424, at *17–18 (A.F. Ct. Crim. App. 30 Aug. 2018) (unpub. op.); *United States v. Hamric*, No. ACM 39096, 2018 CCA LEXIS 3, at *11–12 (A.F. Ct. Crim. App. 5 Jan. 2018) (unpub. op.), *rev. denied*, 77 M.J. 369 (C.A.A.F. 2018); *United States v. Monahan*, No. ACM 38084, 2013 CCA LEXIS 748, at *23–24 (A.F. Ct. Crim. App. 28 Aug. 2013) (unpub. op.). Because we determine that Appellant failed to exhaust his administrative remedies, we will not now consider Appellant's claims cast as violations of Article 58, UCMJ.

### 3. Article 66, UCMJ—Sentence Appropriateness Review

Under Article 66(c), UCMJ, we have broad authority and the mandate to approve only so much of the sentence as we find appropriate in law and fact and may, therefore, grant sentence relief, without finding a violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016); *see United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002). In considering Article 66(c)-based claims, we have declined to require appellants to demonstrate they have previously exhausted administrative remedies prior to seeking judicial relief. *See United States v. Henry*, 76 M.J. 595, 610 (A. F. Ct. Crim. App. 2017). We instead consider the entire record and typically give

"significant weight" to an appellant's failure to exhaust those remedies before requesting judicial intervention. *Id.*

For 28 days, Appellant was kept in Otero County's Restricted Housing Unit segregated from the other inmates. Because he was not permitted to leave his cell on weekends, Appellant averaged less than one hour a day each week outside of his cell for recreation. When he was allowed recreation time, Appellant was required to spend that time alone. Appellant was given his meals through an opening in his cell door, and he consumed his meals alone in his cell. The record does not disclose any interaction between Appellant and Otero County staff other than Appellant's initial in-processing and being escorted while restrained to and from the shower three times a week. The sole reason advanced by the Government for placing Appellant in the Restricted Housing Unit was to avoid commingling Appellant with foreign nationals incarcerated at Otero County. No evidence has been presented that either Air Force or Otero County officials considered less-restrictive confinement conditions for Appellant.

Air Force Instruction 31-105 defines the term "restrictive housing" as having three basic elements—a confinee being: separated from the general population; being housed in a cell or locked room; and unable to leave the cell "*for a vast majority of the day, typically 22[ ]hours or more.*" ¶ A.19.1 (emphasis in original).[6] In general, the AFI conditions the use of restrictive housing to very limited circumstances and—when it is imposed—confinees are to receive no less than two hours outside of their cells per day. *Id.* ¶¶ A.19.1.2–3, A.19.10. These provisions pertain to the Air Force Corrections System. *Id.* ¶ 2.6.2.20.

The relevant question under Article 66(c) is whether Appellant's confinement conditions rendered his sentence inappropriately severe. We have previously held that a policy of segregating military prisoners from the general population at a non-military confinement facility to prevent commingling with foreign nationals does not constitute cruel and unusual punishment under an Eighth Amendment analysis, absent evidence the prison officials acted with deliberate indifference towards a prisoner's health and safety. *See, e.g.*, *United States v. Wilson*, 73 M.J. 529, 535 (A.F. Ct. Crim. App. 2014); *United States v. Luckado*, No. ACM 37962, 2014 CCA LEXIS 397, at *11 (A.F. Ct. Crim. App. 15 Jul. 2014) (unpub. op.). Appellant argues our decision in *United States v. Gay* entitles him to relief by virtue of being in segregated con-

---

[6] Guidance regarding restrictive housing is set out in Attachment 19 to AFI 31-105, titled, "Limiting the Use of Restrictive Housing." The AFI does not use the term "solitary confinement."

finement conditions solely to prevent him from being housed with foreign nationals. Staff Sergeant (SSgt) Gay was confined to a segregated cell for 23 hours a day, similar to Appellant. *See Gay*, 74 M.J. at 739. However, SSgt Gay was segregated at the request of Air Force officials in spite of the fact that the confinement facility would have kept SSgt Gay in the general population without commingling him with foreign nationals but for the Air Force's request. *Id.* at 739, 743. Unlike the facts in *Gay*, Appellant was placed in the Restricted Housing Unit by operation of Otero County's policy of placing all military confinees there. Although Appellant's command acquiesced to Otero County's policy, we find such acquiescence is demonstrably different from affirmative action by military officials to override a civilian confinement facility's policies with the resulting consequence of making the conditions of confinement more severe. The United States Court of Appeals for the Armed Forces (CAAF) has held that this court did not abuse its discretion in granting relief in *Gay*, but pointed to the unique facts and legal errors in that case and explained, "[i]n reaching this conclusion, we do not recognize unlimited authority of the Courts of Criminal Appeals to grant sentence appropriateness relief for any conditions of post-trial confinement of which they disapprove." 75 M.J. at 269.

Appellant's confinement conditions at Otero County were sparse and unpleasant. They did not, however, rise to the level of an Eighth Amendment or Article 55, UCMJ, violation which requires a denial of "the minimal civilized measure of life's necessities" or "'deliberate indifference' to inmate health or safety." *Avila*, 53 M.J. at 101 (quoting *Farmer*, 511 U.S. at 834). In *Avila*, the CAAF found conditions substantially similar to Appellant's did not amount to a violation under either the Eighth Amendment or Article 55, UCMJ.[7] Corporal Avila also complained he should have been placed in less-restrictive confinement based on a Navy regulation; the CAAF determined "[t]he fact that regulations were not followed does not demonstrate a 'sufficiently serious' deprivation under the Eighth Amendment." *Id.* at 102.

Appellant argues the Air Force violated the provisions of AFI 31-105 by failing to adhere to the limitations on the use of restrictive housing in that instruction. By its terms, the AFI governs Air Force confinement facilities. Appellant has failed to establish what application, if any, the AFI has to non-

---

[7] Corporal Avila alleged, and the Government did not dispute, that he was "housed in a windowless cell; could not communicate with other inmates; was only allowed one hour of recreation per day, five days per week; had to wear handcuffs and shackles when escorted outside his cell; and had to remain behind a [plexiglass] partition when receiving visitors." *Avila*, 53 M.J. at 100.

military facilities, such as Otero County, where Appellant was initially confined. While we agree the Air Force must not direct confinement in a non-military facility under conditions that would amount to cruel and unusual punishment under law, Appellant has not established any requirement that the Air Force must use only those civilian confinement facilities that meet the Service's restrictive housing standards. Accordingly, we find Appellant has not shown a violation of AFI 31-105 by Air Force officials in his case.

Even assuming every aspect of Appellant's declaration is accurate, we find he has not shown the conditions of his confinement rendered his sentence inappropriately severe, and we decline to provide sentence relief under Article 66(c), UCMJ.

## B. Addendum to the SJAR

Appellant sought clemency from the convening authority based on the confinement conditions at Otero County. In his addendum to the SJAR, the convening authority's SJA acknowledged Appellant's complaint and wrote that he "considered carefully this allegation of error, and find[s] it to be without merit." Appellant argues the SJA's comment "provided inadequate and imprecise advice to the convening authority," thereby prejudicing Appellant's opportunity for obtaining clemency from the convening authority. The gist of Appellant's argument is that by describing Appellant's complaint as being "without merit," the SJA implied Appellant had no rational basis for seeking redress.

We review de novo alleged errors in post-trial processing. *See United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000) (citation omitted); *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted). The threshold for establishing prejudice in post-trial processing is low, but an appellant must make at least "some colorable showing of possible prejudice." *United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005) (quoting *Kho*, 54 M.J. at 65).

Rule for Courts-Martial (R.C.M.) 1106(d)(4) requires the SJA to state whether corrective action on the findings or sentence should be taken when the defense clemency submissions allege legal error. Whether Appellant's confinement conditions violated the Eighth Amendment, or Articles 55 or 58, UCMJ, is a question of law. Consequently, it was not error for the SJA to summarize Appellant's complaint as being "without merit." The SJA's response "may consist of a statement of agreement or disagreement with the matter raised by the accused. An analysis or rationale for the staff judge advocate's statement, if any, concerning legal error is not required." R.C.M. 1106(d)(4). Here, the SJA identified Appellant's allegation of error, consid-

ered the matter, and stated his legal opinion about it. Nothing more was required.[8]

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[8] We have reached the same conclusion in recent cases raising this same issue. *See, e.g.*, *United States v. Lemburg*, No. ACM 39261, 2018 CCA LEXIS 424, at \*20–21 (A.F. Ct. Crim. App. 30 Aug. 2018) (unpub. op.); *United States v. Chesser*, No. ACM 39207, 2018 CCA LEXIS 229, at \*19–20 (A.F. Ct. Crim. App. 4 May 2018) (unpub. op.), *rev. denied*, 78 M.J. 67 (C.A.A.F. 2018).