UNITED STATES, Appellee

V.

Nura L. SALES, Sergeant
U.S. Army, Appellant

No. 00-0577

Crim. App. No. 9602005

United States Court of Appeals for the Armed Forces

Argued October 3, 2001

Decided January 24, 2002

GIERKE, J., delivered the opinion of the Court, in which
EFFRON, J., and SULLIVAN, S.J., joined.  BAKER, J., filed
a dissenting opinion, in which CRAWFORD, C.J., joined.

Counsel

For Appellant:  Captain Mary C. Vergona (argued); Colonel Adele
  H. Odegard, Lieutenant Colonel David A. Mayfield, Major
  Jonathan F. Potter, and Captain David S. Hurt (on brief);
  Lieutenant Colonel E. A. Chandler, Jr.

For Appellee:  Captain Jennifer A. Parker (argued); Colonel David
  L. Hayden, Lieutenant Colonel Edith M. Rob, and Major Anthony
  P. Nicastro (on brief).

Military Judge:  Kenneth D. Pangburn

  **This opinion is subject to editorial correction before final publication.**

Judge GIERKE delivered the opinion of the Court.

A military judge sitting as a special court-martial convicted appellant, contrary to his pleas, of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The adjudged and approved sentence provides for a bad-conduct discharge, forfeiture of $300.00 pay per month for six months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review of the following issue:

> WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED TO THE MATERIAL PREJUDICE OF APPELLANT'S SUBSTANTIAL RIGHTS IN REFUSING TO ORDER A DUBAY HEARING TO RESOLVE THE FACTUAL CONFLICT BETWEEN AFFIDAVITS CONCERNING APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL.

For the reasons set out below, we set aside the decision of the Court of Criminal Appeals and remand for further factfinding.[*]

### Factual Background

At the time of trial, appellant was a Sergeant (E-5) with almost ten years of service. The charges were based on a positive urinalysis. Appellant was offered nonjudicial punishment and demanded trial by court-martial. See Art. 15(a), UCMJ, 10 USC § 815(a).

---

[*]This Court also granted review of the following issue:

> WHETHER THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT WRONGFULLY USED COCAINE.

In light of our resolution of the issue regarding ineffective assistance of counsel, this issue is dismissed without prejudice to appellant's right to raise it again during the normal course of appellate review.

Both civilian and military counsel represented appellant at his court-martial. Four senior noncommissioned officers testified for the defense. They all testified that appellant was a good soldier; that he was an upbeat, energetic person; and that he was devoted to physical fitness.

Appellant's sister testified that appellant's Uncle Bernard was well known among the family members as a cocaine user who attempted to conceal his cocaine use from his family by mixing it in his drinks. She testified that Uncle Bernard hosted a family fish fry during the weekend of August 24, 1996, in connection with the funeral of appellant's grandfather. Appellant's urinalysis sample was collected three days later. (R. 106-116)

Appellant's sister testified that at the fish fry, she observed Uncle Bernard fixing drinks from the back of his car and serving them to everyone. On the following morning, appellant was "all jittery," vomiting, and suffering from diarrhea. Appellant's sister also testified that appellant is a truthful person; that he witnessed the detrimental effects of drugs on other members of the family; and that using drugs was not consistent with what she knew about her brother.

Appellant unequivocally denied that he knowingly used cocaine. He testified that he watched friends and relatives destroy their lives by using drugs. He testified that he is an avid weight lifter, and that he is very concerned about his physical fitness and appearance. He testified about Uncle Bernard's drug use and his practice of concealing his drug use from family members by mixing cocaine in his drinks. He

testified that he felt sick after attending the family gathering hosted by Uncle Bernard.

On cross-examination, appellant admitted that he did not actually see Uncle Bernard put cocaine in his drink, but he insisted, "I know my uncle." On redirect, appellant testified that he confronted Uncle Bernard, and his fears were confirmed. Appellant attempted to testify that Uncle Bernard admitted putting cocaine in his drink, but the military judge sustained a prosecution objection to that testimony.

Sixteen months after his court-martial, appellant submitted an affidavit to the Court of Criminal Appeals, asserting that he told his civilian counsel that Uncle Bernard admitted putting cocaine in his drink. Appellant asserted that his counsel did not contact Uncle Bernard, and that whenever appellant asked his counsel if he contacted Uncle Bernard, his counsel always said no one answered the telephone at Uncle Bernard's house.

Appellant also submitted an affidavit from Uncle Bernard, who asserted that he was willing to testify that he spiked a drink with cocaine and appellant accidentally consumed it. Uncle Bernard asserted that no one contacted him before trial, that his telephone was in working order, and that he would have testified for appellant if he had been contacted.

Appellant's civilian counsel submitted a responding affidavit, asserting that he contacted Uncle Bernard, but Uncle Bernard denied spiking appellant's drink and refused to testify. Counsel further asserted that, even if Uncle Bernard had been willing to testify, he would not have called him as a defense witness. He explained:

4

> The testimony of this witness was not merely unhelpful to the defense case, but extremely damaging. Indeed, compelling this witness to testify would have all but guaranteed an allegation of ineffective assistance and justified a grievance and subsequent investigation by my state bar.

Appellant asserts that his counsel's statement that Uncle Bernard refused to corroborate his testimony is a lie, because his counsel never spoke to Uncle Bernard. The affidavits are in direct conflict on two issues: (1) whether civilian counsel contacted Uncle Bernard; and (2) whether Uncle Bernard was willing to testify that he spiked appellant's drink.

The court below resolved the issues against appellant without ordering a factfinding hearing. The court concluded, citing United States v. Ginn, 47 MJ 236, 248 (1997), and United States v. McGill, 11 F.3rd 223, 226 (1st Cir. 1993), that a factfinding hearing was not necessary.

### Discussion

Appellant has the burden of overcoming the presumption that his counsel was competent. Strickland v. Washington, 466 U.S. 668, 687-89 (1984). This Court has adopted a three-pronged test to determine if the presumption of competence has been overcome:

> 1. Are the allegations made by appellant true; and, if they are, is there a reasonable explanation for counsel's actions in the defense of the case?
>
> 2. If they are true, did the level of advocacy "fall[] measurably below the performance . . . [ordinarily expected] of fallible lawyers"? . . . .
>
> 3. If ineffective assistance of counsel is found to exist, "is . . . there . . . a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt?"

5

United States v. Polk, 32 MJ 150, 153 (CMA 1991) (internal citations omitted).  Counsel have a duty to perform a reasonable investigation or make a determination that an avenue of investigation is unnecessary.  United States v. Brownfield, 52 MJ 40, 42 (1999).

In United States v. Ginn, supra, this Court set out six principles for determining whether a factfinding hearing is required to resolve conflicting posttrial affidavits regarding allegations of ineffective assistance of counsel:

> First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.
>
> Second, if the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.
>
> Third, if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.
>
> Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the court may discount those factual assertions and decide the legal issue.
>
> Fifth, when an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record . . . unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.
>
> Sixth, the Court of Criminal Appeals is required to order a factfinding hearing only when the above-stated circumstances are not met.

The Court of Criminal Appeals determined that a factfinding hearing was not required in this case under the first, second, fourth, and sixth Ginn principles.

The ultimate question whether there was ineffective assistance of counsel is a question of law that we review de novo. United States v. Wiley, 47 MJ 158, 159 (1997). Because the Ginn principles ensure a reliable factual predicate for our de novo review of allegations of ineffective assistance of counsel, we will also review de novo the issue whether the lower court correctly applied those principles. See United States v. Griffin, 50 MJ 278, 284 (1999) (de novo review of issue whether military judge properly applied Daubert framework to ensure that scientific evidence was reliable).

We hold that the court below erred by not ordering a factfinding hearing. With respect to the first Ginn principle, we believe there is a reasonable probability that there would have been a different result if the factual conflicts among the affidavits were resolved in appellant's favor. See Strickland v. Washington, supra at 694. With respect to the second principle, the affidavits from appellant and Uncle Bernard do not set out "speculative or conclusory observations." Instead, they set forth two specific facts: (1) counsel did not contact Uncle Bernard; and (2) Uncle Bernard would have supported appellant's claim of innocent ingestion by admitting that he spiked appellant's drink. With respect to the fourth principle, the appellate filings and the record as a whole do not "compellingly demonstrate" the improbability of the facts asserted by appellant and Uncle Bernard. Accordingly, under the sixth principle, the

7

Court of Criminal Appeals was required to order a factfinding hearing.

## Decision

The decision of the United States Army Court of Criminal Appeals is set aside.  The record of trial is returned to the Judge Advocate General of the Army for submission to a convening authority for a factfinding hearing on appellant's claim of ineffective assistance of counsel under United States v. DuBay, 17 USCMA 147, 37 CMR 411 (1967).  If a factfinding hearing is impracticable, the convening authority may set aside the findings and sentence and order a rehearing or dismiss the charges.  If a factfinding hearing is conducted, the record of trial, including the factfinding hearing, will then be transmitted to the Court of Criminal Appeals for review under Article 66, UCMJ, 10 USC § 866.  Thereafter, Article 67, UCMJ, 10 USC § 867, shall apply.

United States v. Sales, No. 00-0577

BAKER, Judge, with whom CRAWFORD, Chief Judge, joins (dissenting):

I disagree with the majority's application of United States v. Ginn, 47 MJ 236 (1997). Although the affidavits in question pose an apparent factual conflict – a battle of affidavits – appellant's affidavits are improbable, if not incredible. Therefore, applying the fourth Ginn exception, a DuBay hearing is not warranted to resolve appellant's ineffective assistance of counsel claim.

In Ginn, this Court concluded that the service appellate court erred by exercising its factfinding power to resolve a conflict between post-trial affidavits from the parties. However, the Court also concluded that a post-trial hearing "is not required in any case simply because an affidavit is submitted by an appellant." Id. at 248. In particular, the Court enunciated six principles for determining when apparently conflicting affidavits warrant a factfinding hearing, including the fourth principle, which states:

> Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the court may discount those factual assertions and decide the legal issue.

Id.

1

That is what the service appellate court correctly did in this case, finding that "[i]t is plain from the 10 November 1996 'supplemental notice' that the civilian defense counsel was aware of 'Uncle Bernard's' key role in the innocent ingestion defense, aware of the means of reaching him, and yet plainly had decided to frame the defense without 'Uncle Bernard's' participation." Unpub. op. at 8. As a result, the Court of Criminal Appeals went on to apply Strickland to appellant's allegation of ineffective assistance of counsel. The court found that defense counsel had made reasonable, tactical choices under the circumstances of appellant's case, citing to defense counsel's affidavit, which states:

> Tactically, even if 'Uncle Bernard' wanted to testify on Sergeant Sales [sic] behalf, I would not have called him as a witness. The testimony of this witness was not merely unhelpful to the defense case, but extremely damaging. Indeed, compelling this witness to testify would have all but guaranteed an allegation of ineffective assistance. . . .

The majority argues that two areas of affidavit conflict warrant resolution in a DuBay hearing. First, whether counsel contacted Mr. Zimmerman (Uncle Bernard). Second, whether Mr. Zimmerman was "willing to testify that

he spiked appellant's drink."[*] _ MJ at (5). Reviewing this case de novo (see United States v. Wiley, 47 MJ 158, 159 (1997)), in my view, the appellate filings and record as a whole compellingly demonstrate the improbability of appellant's position on these points.

First, appellant's affidavit makes clear, as did his trial testimony, that he was in touch with his uncle prior to the trial. And yet, Mr. Zimmerman asserts: "If Ray's lawyer had called and talked to me and informed me when and where the trial was, I would have come and told the truth." It is improbable to suggest that a willing Mr. Zimmerman was prepared to testify and exonerate appellant, but for want of a phone call from defense counsel he did not do so, when appellant himself was in contact with Mr. Zimmerman and surely knew the when and where of his own trial.

Second, it is equally improbable, given the purported nature of Mr. Zimmerman's testimony, that appellant would sit through his trial, and, in fact, testify to the military judge (with hearsay objection) that Mr. Zimmerman "admitted to putting coke . . .," without protesting the

---

[*]At trial, appellant testified that he called his uncle "to find out and he admitted that he had been putting coke . . . ," at which point an objection cut off appellant's statement. In his post-trial affidavit, Mr. Zimmerman states that he would have testified he "gave [appellant] the wrong cup."

absence of his uncle at trial.  Mr. Zimmerman did not slip past this trial; he was the focal point of the trial.

Third, it is incredible that if Mr. Zimmerman was willing to testify and appellant had requested that his counsel call Mr. Zimmerman, appellant would wait until sixteen months after his conviction to raise such a fundamental issue.

Requiring a hearing in such a context sets the DuBay bar too low, even as the standard for succeeding on an ineffective assistance claim remains very high under Strickland.  In Dubay itself, the Court concluded that it was the nature of the conflict in question relating to command control that made a fact-finding hearing necessary. 17 USCMA 147, 149, 37 CMR 411, 413 (1967) ("In the nature of things, command control is scarcely ever apparent on the face of the record, and, where the facts are in dispute, appellate bodies in the past have had to resort to the unsatisfactory alternative of settling the issue on the basis of ex parte affidavits[.]").  In other words, DuBay hearings are not automatic or default remedies for issues raised post-trial.

To be clear, I agree with the premise behind DuBay. The adversarial process, with its cross-examination and demeanor observation, is a better factfinding instrument

4

than appellate review of affidavits.  I also believe that as a general matter, the interests of justice are better served by erring on the side of additional factfinding rather than on the side of judicial economy.  But there must be structure and discipline to the process, which Ginn seeks to establish, so that courts-martial do not automatically move from findings, to sentencing, to a post-trial DuBay inquiry into counsel's management of the defense.  Using the "Uncle Bernard standard," it does not strike me as particularly hard to generate battling affidavits on appeal.  In a case involving more than one actor, might not the second actor be willing to assert, after the fact, that he was willing to exonerate the accused if only he had been called?

For the reasons stated above, I believe the record compellingly demonstrates the improbability of appellant's facts.  The Court of Criminal Appeals was correct to proceed to the underlying issue of ineffective assistance of counsel and, applying a de novo standard of review at this level, correct to not second guess defense counsel's decision not to call Mr. Zimmerman for the tactical reasons readily apparent in all that was said about Mr. Zimmerman at trial.

Therefore, I respectfully dissent.