# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40023**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Jacob W. GREENFIELD**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 10 August 2022

———————————

*Military Judge:* Rebecca E. Schmidt.

*Sentence:* Sentence adjudged on 15 December 2020 by GCM convened at Holloman Air Force Base, New Mexico. Sentence entered by military judge on 12 January 2021: Dishonorable discharge, confinement for 38 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant:* Major Jenna M. Arroyo, USAF.

*For Appellee:* Lieutenant Colonel Amanda L.K. Linares, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RAMÍREZ, and RICHARDSON, *Appellate Military Judges.*

Judge RAMÍREZ delivered the opinion of the court, in which Senior Judge POSCH and Judge RICHARDSON joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

RAMÍREZ, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of two specifications of possession of child pornography,[1] two specifications of viewing child pornography, and one specification of distribution of child pornography, all in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[2] After accepting Appellant's guilty pleas, the military judge sentenced Appellant to a dishonorable discharge, confinement for 38 months,[3] forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority took no action on the findings and approved the sentence.

Appellant raises a single issue on appeal consisting of two related claims for relief: (1) whether Appellant suffered cruel and unusual punishment under the Eighth Amendment to the United States Constitution[4] and Article 55, UCMJ, 10 U.S.C. § 855, during the 154 days he was confined at Davis-Monthan Air Force Base (AFB), and (2) whether Appellant is entitled to relief pursuant to Article 66, UCMJ, 10 U.S.C. § 866, based on those same conditions of post-trial confinement.

Finding no error materially prejudicial to a substantial right of Appellant, and following this court's Article 66(d), UCMJ, 10 U.S.C. § 866(d), mandate to affirm only so much of the findings and the sentence as we find, on the basis of the entire record, should be approved, we affirm the findings and the sentence.

---

[1] Appellant pleaded guilty to these two specifications, except to the language "with intent to distribute." He pleaded not guilty to the excepted language. Also pursuant to his plea agreement, the Government withdrew and dismissed the excepted language with prejudice.

[2] All references in this opinion to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). Unless otherwise noted, all other references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Specifically, the military judge sentenced Appellant to be confined for six months on Specification 1 (possessing child pornography), to be confined for six months on Specification 2 (possessing child pornography), to be confined for six months on Specification 3 (viewing child pornography), to be confined for four months on Specification 4 (viewing child pornography), and to be confined for 16 months on Specification 5 (distributing child pornography). The military judge ordered the sentences to be served consecutively.

[4] U.S. CONST. amend. VIII.

## I. BACKGROUND

Appellant was stationed at Misawa Air Base, Japan, between 2016 and 2018. He was then stationed at Holloman AFB from 2018 until his court-martial in 2019. While assigned to each installation, Appellant possessed, viewed, and distributed child pornography. He was convicted at trial by court-martial for his conduct, and part of his sentence included confinement. The confinement was at Davis-Monthan AFB, Arizona, as well as Naval Consolidated Brig Miramar, located at the Marine Corps Air Station Miramar in San Diego, California. Appellant raises no issues on appeal concerning the substance of his court-martial or his confinement at Naval Consolidated Brig Miramar. The focus of his appeal is conditions of confinement at Davis-Monthan AFB from 16 December 2020 to 19 May 2021.

## II. DISCUSSION

### A. Cruel and Unusual Punishment

Appellant claims that he was subjected to cruel and unusual punishment while he was confined at Davis-Monthan AFB awaiting transfer to Naval Consolidated Brig Miramar. He bases his claim on four allegations: (1) that he did not have access to meaningful exercise, (2) that he was not provided enough fruits and vegetables in his diet, (3) that he requested both medical and mental health care and was not provided access to either, and (4) that confinement guards did not adhere to coronavirus (COVID-19) protocols. We are not persuaded by Appellant's contentions and find relief is not warranted for this claim.

#### 1. Additional Background

At Appellant's court-martial, trial defense counsel provided, as an appellate exhibit, a memorandum regarding Appellant's post-trial and appellate rights. In this document, Appellant acknowledged being informed of the following:

> **8. Confinement Conditions.** Under the 8th Amendment of the United States Constitution and Article 55, UCMJ, you have the right to be confined in a way that does not amount to cruel or unusual punishment. In addition, for confinement conditions that are egregious but do not amount to cruel or unusual punishment, the Air Force Court of Criminal Appeals has the discretion to reduce your sentence. In order to get relief . . . for the poor conditions of your confinement, you ordinarily must exhaust every administrative remedy available to attempt to correct the issue. This includes (1) submitting a complaint to the confinement facility (preferably in writing); (2) requesting relief

3

through clemency (if known at that time); and (3) filing a complaint with the commander who ordered your confinement under Article 138, UCMJ[ ]. By letting your trial defense counsel or your appellate counsel know of the issue as soon as possible, they can assist you with all of these procedures. If you have trouble reaching your attorney because of the conditions of your confinement, be sure to submit a complaint to the confinement facility promptly, repeatedly, and in writing (if possible).

On the record, the military judge ensured that trial defense counsel had explained to Appellant his post-trial and appellate rights; that Appellant did not have any questions about his post-trial and appellate rights; and that Appellant and his trial defense counsel had signed the appellate exhibit that described his post-trial and appellate rights. Appellant was sentenced to confinement on 15 December 2020 at Holloman AFB and was transported to the confinement facility at Davis-Monthan AFB, arriving on 16 December 2020. On the same day that he was sentenced, Appellant requested to be represented by appellate defense counsel.[5]

On 25 December 2020, while confined at the Davis-Monthan AFB facility, Appellant filed a clemency request with the convening authority. This request was submitted by trial defense counsel on Appellant's behalf. In that request, Appellant asked for the convening authority to reduce his sentence to confinement because of his medical issue (a torn labrum, which required bolts being placed into his hip), because he wore hearing aids, and because he was diagnosed with extreme depression and anxiety.[6] Specifically, Appellant wrote:

> I understand I must serve my time in confinement, but all of my medical issues prevent me from living a pain free life while in confinement, I humbly ask that you consider reducing my confinement by ten months. This will lessen the time I will have incomplete medical care or assistance during confinement.

Although Appellant anticipated concerns relating to medical issues, he did not have the opportunity to raise specific concerns now raised on appeal, namely concerns about physical exercise, nutritious meals, medical and mental health appointments, and COVID-19 protocols, which are absent from his

---

[5] The record does not indicate when Appellant was assigned appellate defense counsel, but such counsel did appear on Appellant's behalf as early as 15 April 2021 when filing a motion for enlargement of time with this court.

[6] Appellant was sentenced to 38 months of confinement. Pursuant to Article 60(c)(4)(A), UCMJ (2016 *MCM*), the convening authority did not have the legal authority to reduce the confinement because it was an "adjudged sentence of confinement for more than six months."

clemency submission. Appellant was confined at Davis-Monthan AFB for 154 days, from 16 December 2020 until 19 May 2021. During this time, Appellant did not file a written complaint seeking to address the issues he now raises.

On 8 July 2021, Appellant filed a clemency request with the Air Force Parole and Clemency Board concerning the conditions of his confinement at Davis-Monthan AFB. It is unknown from the documents Appellant provided to this court what response, if any, Appellant may have received.

On 27 July 2021, while at Naval Consolidated Brig Miramar, Appellant filed an informal Article 138, UCMJ, 10 U.S.C. § 938, complaint about the conditions of his confinement at Davis-Monthan AFB.[7] The complaint was submitted to the commander of the unit to which Appellant was attached prior to his confinement, as well as the commander of the security forces squadron at Davis-Monthan AFB. The complaint requested administrative credit against Appellant's adjudged sentence. The complaint was denied by the commander of Appellant's former unit for two reasons: (1) Appellant was no longer at Davis-Monthan AFB, and (2) this commander did not have authority to provide administrative credit. On 15 September 2021, while still at Naval Consolidated Brig Miramar, Appellant filed a formal Article 138, UCMJ, complaint, to the commander exercising general court-martial convening authority, again alleging the same issues he raised in his informal complaint. The formal complaint was denied for the same reasons as the informal complaint.

We granted Appellant's motion to attach documents, which included the two Article 138, UCMJ, complaints, along with the responses; an additional clemency request; and a declaration from Appellant, dated 4 April 2022. We also granted the Government's motion to attach documents, which included declarations from two individuals assigned to duty at the confinement facility at Davis-Monthan AFB. Finally, we granted Appellant's subsequent motion to attach documents, which included another declaration from Appellant, dated 19 May 2022; a declaration from an individual associated with the Air Force Appellate Defense Division; and confinement facility documents concerning COVID-19 protocols.

### a. Opportunity to Exercise

In his 4 April 2022 declaration, Appellant states that he "was never allowed to exercise outdoors," nor was he "afforded the opportunity" to do so. In his

---

[7] An Air Force petitioner must first submit a timely informal complaint under Article 138, UCMJ, requesting relief from his commanding officer. If the petitioner's commander denies the complaint, then the petitioner has a statutory right to submit a formal complaint to the officer exercising general court-martial jurisdiction. 10 U.S.C. § 938; *see also* Air Force Instruction 51-505, *Complaints of Wrongs Under Article 138, Uniform Code of Military Justice*, ¶ 1.4 (4 Apr. 2019).

Article 138, UCMJ, complaints, he provides further details. Specifically, he alleges that the only machines available for exercise were an elliptical machine and a treadmill, both of which caused him hip pain. In his 4 April 2022 declaration, Appellant further states that he requested to use the base gym, but was told that the guards "did not have the bodies to spare to take [him] to the gym." In that declaration, Appellant alleges that the "lack of outdoor exercise directly affected [his] psychological well-being."

Technical Sergeant (TSgt) CF, the noncommissioned officer in charge (NCOIC) of confinement at Davis-Monthan AFB from February 2020 until April 2022, provided a declaration. In the declaration, he explains that the confinement facility did not have an "outside yard" area for inmates to exercise. He further explains that prior to 2020, there had been a "verbal agreement" with the base fitness center to allow the inmates to use the fitness center's basketball court, indoor running track, and cardiovascular room. However, TSgt CF notes that the agreement ended due to the COVID-19 pandemic. TSgt CF also notes that the fitness center's outdoor running track was not an option for inmates out of a concern for escape. Additionally, TSgt CF explains that the confinement facility provided inmates with a treadmill, an elliptical machine, "Perfect Push-ups" equipment, an aerobic mat, and that staff would print out a "body-weight only" plan for those inmates who requested one. Finally, TSgt CF states that "on numerous occasions, [Appellant] was viewed utilizing laundry detergent bottles and books for strength training."

In Appellant's informal and formal Article 138, UCMJ, complaints, he admits that while he was not "allowed to go outside for recreation," the Davis-Monthan confinement facility was "an 'open bay' style facility, thus [he] was permitted to walk around freely and was not confined to a cell." Additionally, he states that his "principle [sic] concern [was] the lack of time [he] spent outdoors." Meanwhile, in his clemency request to the Air Force Parole and Clemency Board, Appellant states that during his entire time at the Davis-Monthan confinement facility, he was allowed to go outdoors four times: "once to speak with a chaplain," and "three times to eat a meal outside." In his 4 April 2022 declaration to this court, he references another time that he was permitted to go outside to clean the yard area.

### b. Sufficient Fruits and Vegetables

Appellant claims in his 4 April 2022 declaration that the Davis-Monthan confinement facility violated his "right to have nutritious meals;" that the facility "fail[ed] to provide him any fruits or vegetables for 154 days;" and that this "caused [his] gums' deterioration, such that [he] experienced bloody gums, and increased sensitivity." In his Article 138, UCMJ, complaints, he provides further details. Specifically, he alleges that his breakfast was one of six items: either three different types of breakfast burritos or three different types of

breakfast sandwiches; that his lunch was a chicken Caesar salad, "sometimes served frozen;" and that his dinner was one of three items: a bacon, lettuce, and tomato sandwich with fries; chicken tenders with fries; or a buffalo chicken wrap with fries. Appellant further notes in his Article 138 complaints that he requested "fruit and other vegetables," but was denied these requests. In his Article 138 complaints, he alleges that this caused him to "suffer[ ] increased mental anguish, diminished morale and a lack of vitamins."

In his declaration, TSgt CF explains that the confinement facility did not have a working dining facility and that other options had been attempted. According to TSgt CF, "[t]he only viable on-base food source was the Davis-Monthan Bowling Alley, as they were able to provide all three meals daily." However, at some point the bowling alley no longer offered a breakfast menu, after which point inmates were provided breakfast from a "coffee/sandwich bar." Lunch continued to be a salad. TSgt CF states that the confinement facility would take into account "any food allergies/religious requirements that were brought to [their] attention."

### c. Access to Medical and Mental Health Services

In his 4 April 2022 declaration, Appellant states, "I requested both medical care and mental health care while at Davis-Monthan, but was never provided access to either type of care." He also states in that declaration that he "specifically requested a multi-vitamin as well." He further claims in that declaration that he was concerned that his "depression was being exacerbated," that he "requested to see a therapist multiple times," and that he "never met with a mental health therapist" while confined at Davis-Monthan.

TSgt CF, meanwhile, explains in his declaration that when an inmate first arrives at Davis-Monthan's confinement facility, the inmate is seen by medical staff and is "highly encouraged" to "mention any issue/concern they have to the doctor so as to streamline any medical/psychological assistance required." Additionally, TSgt CF provides that:

> When an inmate wants to be seen by a medical provider, any outside agency or phone call, they are required to fill out a DD Form 510 (Request Form). [Appellant] filled out roughly 30[8] Requests for numerous items/visits throughout his incarceration.

---

[8] The current NCOIC of confinement at Davis-Monthan, TSgt WA, also provided a declaration and reviewed Appellant's records. He states that he "located approximately 50 DD Form 510, *Prisoner Request*, that were filled out by [Appellant]." He also explains that the forms "are used to request anything from confinement staff, including medical visits, phone calls, or any other accommodations or requests an inmate has."

At no point in time was [Appellant] denied medical/mental health attention that was requested via DD Form 510.

In his 19 May 2022 declaration, Appellant states that he filled out the DD Form 510 to make phone calls and to get a haircut. He also states that his requests for medical and mental health appointments were made verbally because this is what he was told to do, and that it was his "understanding" that "the staff was 'working' [his] requests," but he never met with medical or mental health staff personnel.

### d. COVID-19 Concerns

Although Appellant does not claim he contracted COVID-19 while in custody at the Davis-Monthan confinement facility, or that he was confined with anyone who tested positive for COVID-19, he claims in his 4 April 2022 declaration that there were "5–6 different guards," and alleges that "the guards never wore masks." According to Appellant, there were approximately seven other inmates during his time in custody and that he and they "were not physically separated."

In his declaration, TSgt CF explains that as the NCOIC of the confinement facility, he received guidance from the "Davis-Monthan Covid Cell," which provided that new inmates were to be segregated for 72 hours unless they were "showing signs/symptoms" of COVID-19. Additionally, he states that the guards wore masks as soon as the United States Secretary of Defense initiated the mask mandate for personnel indoors, and that masks were also provided to the inmates. Finally, TSgt CF notes that the guards stopped wearing masks once they were fully vaccinated and the rules no longer required such individuals to wear masks.

In his 19 May 2022 declaration, Appellant states that he read TSgt CF's declaration, and now has a "recollection [that] the guards received their vaccinations around March 2021" but states he was not yet vaccinated. Appellant also acknowledges that he was segregated for the first 72 hours after arriving to the Davis-Monthan confinement facility.

### 2. Law

The "Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (internal quotation marks and citation omitted). A military member is entitled to protection against cruel and unusual punishment both by Article 55, UCMJ, and the Eighth Amendment of the United States Constitution. *Avila*, 53 M.J. at 101 (citations omitted).

"In general, we apply the United States Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where

legislative intent to provide greater protections under Article 55, UCMJ, is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015) (citing *Avila*, 53 M.J. at 101), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that he has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938 [2000].

*United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (second alteration in original) (internal quotation marks, ellipses, and citations omitted).

Federal civilian courts have addressed whether the lack of outdoor exercise may violate the Eighth Amendment. The United States Court of Appeals for the Tenth Circuit concluded that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates, and some courts have held a denial of fresh air and exercise to be cruel and unusual punishment under certain circumstances." *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) (emphasis, internal quotation marks, and citations omitted).[9]

Additionally, "[d]eliberate withholding of nutritious food or substitution of tainted or otherwise sickening food, with the effect of causing . . . severe hardship, would violate the Eighth Amendment." *Prude v. Clarke*, 675 F.3d 732, 734 (7th Cir. 2012) (citations omitted). The Court of Appeals for the Armed Forces (CAAF) has recognized that a confinement facility's "failure to provide sufficient food" violates the Eighth Amendment. *Avila*, 53 M.J. at 101 (citing *Hutto v. Finney*, 437 U.S. 678, 687 (1978)).

"Denial of adequate medical attention can constitute an Eighth Amendment or Article 55 violation." *United States v. White*, 54 M.J. 469, 474 (C.A.A.F. 2001) (citing *United States v. Sanchez*, 53 M.J. 393, 396 (C.A.A.F. 2000)). However, the standard is "reasonable" medical care rather than "perfect" or "optimal" care. *Id.* at 475 (citation omitted). The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners," manifested by prison guards "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (citations omitted). The Supreme Court "has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner—'deliberate indifference to serious medical needs.'" *Ziglar*

---

[9] The inmate in *Fogle* was deprived of any form of outdoor exercise for three years.

*v. Abbasi*, 137 S. Ct. 1843, 1864 (2017) (quoting *Estelle*, 429 U.S. at 104). "Deliberate indifference" requires that the responsible official must be aware of an excessive risk to an inmate's health or safety and disregard that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842 (citation omitted). One may infer "a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (citation omitted). However, "prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment . . . ." *Id.* at 844.

Additionally, an inmate "must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 469 (C.A.A.F. 2007) (citation omitted); *see also White*, 54 M.J. at 472 (noting that prisoners must exhaust administrative relief before invoking judicial intervention). "This generally means that the prisoner will have exhausted the detention center's grievance system and petitioned for relief under Article 138, UCMJ." *United States v. Henry*, 76 M.J. 595, 610 (A.F. Ct. Crim. App. 2017). "This administrative exhaustion requirement furthers two related goals: the resolution of the issue at the lowest level and the development of the record for later appellate review." *United States v. Wilson*, 73 M.J. 529, 534 (A.F. Ct. Crim. App. 2014) (citation omitted). "Since a prime purpose of ensuring administrative exhaustion is the prompt amelioration of a prisoner's conditions of confinement, courts have required that these complaints be made while an appellant is incarcerated." *Id.* (internal quotation marks and citation omitted). "Unless there are some unusual or egregious circumstances, an appellant with a complaint about post-trial confinement conditions must show he has exhausted the prisoner-grievance system at the confinement facility and that he has petitioned for relief under Article 138, UCMJ." *Id.* (citation omitted).

In determining whether to grant a post-trial hearing to resolve a factual matter pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967), we are guided by the standard enunciated in *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). Courts of Criminal Appeals do not "decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *Ginn*, 47 M.J. at 243. Instead, we employ six principles for determining whether a *DuBay* hearing is appropriate. *United States v. Sales*, 56 M.J. 255, 258 (C.A.A.F. 2002) (citing *Ginn*, 47 M.J. at 248).

**3. Analysis**

We have considered whether a post-trial evidentiary hearing is required to resolve any factual disputes between Appellant's declarations and those provided by the Government. *See Ginn*, 47 M.J. at 248; *DuBay*, 37 C.M.R. at 413.

In this case we find a hearing unnecessary. To the extent the documents are inconsistent, resolving any factual disputes in Appellant's favor would not result in relief. *See Ginn*, 47 M.J. at 248.

Because we find no legislative intent to create greater protections under Article 55, UCMJ, than those guaranteed Appellant by the Eighth Amendment, we will apply the Supreme Court's interpretation of the Eighth Amendment to Appellant's allegations of cruel and unusual punishment. *Lovett*, 63 M.J. at 215. We easily can resolve the asserted issue of cruel and unusual punishment due to the conjunctive nature of the burden on Appellant to show his post-trial confinement conditions warrant intervention by this court. *Lovett*, 63 M.J. at 215. That is, in order to secure relief for cruel or unusual confinement conditions, Appellant bears the burden to demonstrate that all three prongs of the test articulated in *Lovett supra* are met. *Id*. Appellant has failed to do so here, specifically with respect to the third prong of the *Lovett* test—the exhaustion of administrative remedies, prior to invoking judicial intervention, with respect to concerns about post-trial confinement conditions. *Wise*, 64 M.J. at 471. Thus, even if we consider Appellant's assertions in the most favorable light and assume that he did not get to exercise outside, that he did not get as many fruits and vegetables as he wanted, that he did not get the requisite medical and mental health care, and that confinement personnel failed to wear masks before they were fully vaccinated, Appellant has failed to demonstrate that he used, much less exhausted, the available prisoner grievance system, or that he petitioned for relief under Article 138, UCMJ, while confined at the Davis-Monthan AFB confinement facility.

In this case, Appellant concedes that he did not attempt to seek administrative relief pursuant to Article 138, UCMJ, regarding his confinement conditions. He attempts to justify this in two ways. First, he claims that he did not comprehend the importance of filing written complaints and did not have access to a law library until he arrived at the Naval Consolidated Brig Miramar. Second, he claims that he thought it was sufficient to make requests verbally because that was what the guards told him to do.

As to his first position, that he did not comprehend the importance of filing written complaints, we are unconvinced. He was advised orally and in writing that he should make any complaints in writing. Additionally, we know that he understood the importance of filling out written requests when he wanted to make phone calls or wanted a haircut. He could have, and should have, filled out a DD Form 50 to request anything that he complains about now. As to his second position, that he was told to simply ask for things without filing a written complaint, it was clear, even from Appellant's version of events, that he was not getting relief using this method. Appellant would have seen that his

written requests were being honored, and less formal requests were not. Finally, if he had any problems making his complaints heard, he could have contacted his trial defense counsel or his appellate counsel for assistance.

We recognize that in rare circumstances, appellate courts have excused an appellant's failure to satisfy this third prong of the *Lovett* test. These have been situations where truly unusual or egregious circumstances prevented an appellant from filing an Article 138, UCMJ, claim. *See, e.g.*, *Wise*, 64 M.J. at 472–73 (finding "unusual" circumstances when the appellant was confined, in "the cage," shackled, and handcuffed, near Iraqi prisoners). However, we do not find Appellant's case presents such circumstances. Appellant has failed to demonstrate any unusual circumstance that prevented him from seeking relief under Article 138, UCMJ. Even if we overlooked this prong, we further find that Appellant has not satisfied the second prong of the *Lovett* test—a culpable state of mind on the part of prison officials. Appellant has not shown that his command or prison officials were aware of any of the alleged deficient conditions of confinement, or otherwise acted with deliberate indifference.

## B. Sentence Appropriateness under Article 66, UCMJ

Appellant argues we should still grant relief even if we do not grant relief on the bases of claimed violations of the Eighth Amendment or Article 55, UCMJ. As previously noted, Appellant anticipated concerns relating to his medical issues while confined, but in his 25 December 2020 clemency request he did not have the opportunity to raise the specific concerns that are the subject of this appeal. Nonetheless, we assume for purposes of this appeal only that Appellant's specific concerns about the conditions of post-trial confinement at the Davis-Monthan AFB facility are not outside the record for purposes of this court's Article 66, UCMJ, sentence appropriateness review. Therefore, we consider the declarations and documents necessary to resolve the question of sentence appropriateness on the assumption that this question cannot be fully resolved by the materials already in the record when Appellant sought clemency from the convening authority. *See United States v. Willman*, 81 M.J. 355, 359 (C.A.A.F. 2021); *United States v. Jessie*, 79 M.J. 437, 442–44 (C.A.A.F. 2020). We find relief is not warranted on this basis.

### 1. Law

A Court of Criminal Appeals (CCA) reviews de novo the question whether all or part of a sentence is inappropriate. *See United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). In conducting this review, a CCA may affirm only "the sentence or such part or amount of the sentence" as it finds "correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). It follows that a sentence should be approved only to the extent it is found appropriate based on a CCA's review of the entire record.

We assess whether a sentence is inappropriate "by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (quoting *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam)). Although we are empowered to "do justice" in reference to a legal standard, we have no discretion to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

**2. Analysis**

We have considered the particular circumstances of Appellant's case, including the specific concerns about confinement conditions raised on appeal. We have also given individualized consideration to Appellant, the nature and seriousness of the offenses, matters in extenuation and mitigation, Appellant's record of service, and all other matters contained in the record of trial. Under the court's sentence appropriateness authority, we conclude that Appellant's sentence, including a dishonorable discharge, is not inappropriately severe.

### III. Conclusion

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

13