# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40552**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Ricky Z. BARLOW**
Airman (E-2), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 12 June 2025

————————————

*Military Judge*: Matthew P. Stoffel (pretrial); Adam D. Bentz (trial).

*Sentence*: Sentence adjudged 28 September 2023 by GCM convened at Hill Air Force Base, Utah. Sentence entered by military judge on 28 November 2023: Dishonorable discharge, confinement for 6 months, and reduction to E-1.

*For Appellant*: Major Trevor N. Ward, USAF.

*For Appellee*: Lieutenant Colonel J. Peter Ferrell, USAF; Lieutenant Colonel Jenny A. Liabenow; Major Vanessa Bairos, USAF; Major Regina M.B. Henenlotter, USAF; Major Brittany M. Speirs, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, MASON, and KEARLEY, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Chief Judge JOHNSON and Judge KEARLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MASON, Judge:

A military judge sitting alone as a general court-martial convicted Appellant, contrary to his pleas, of one specification of sexual assault without consent, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1] He sentenced Appellant to a dishonorable discharge, confinement for six months, and a reduction to the grade of E-1. Appellant requested that the convening authority defer the adjudged reduction in rank and the automatic forfeitures. The convening authority denied Appellant's requests and took no action on the findings or sentence.[2]

Appellant raises three issues on appeal: (1) whether Appellant was denied effective assistance of counsel; (2) whether Appellant's indexing for sex offender registry violates public policy; and (3) whether the Government committed prosecutorial misconduct by failing to provide discovery of CN's allegations against another Airman.[3]

We have carefully considered issues (2) and (3) and find that they do not require discussion or relief. *See United States v. Guinn*, 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)). As to the remaining issue, we find no error that materially prejudiced Appellant's substantial rights and affirm the findings and sentence.

## I. BACKGROUND

In September 2022, Appellant and CN, who were assigned to the same unit, began spending time together in group settings. On a few occasions, after group gatherings, the two would go back to the dorms together. On two of those occasions, they had consensual sex in the dorms. Appellant was not interested in a committed relationship, which led CN to tell Appellant that they could no longer sleep together.

In November 2022, CN began dating another Airman, MP. That relationship continued through December 2022.

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ and Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The entry of judgment neglects to reflect Appellant's deferment requests or the convening authority's denial of the requests. Appellant does not raise this issue or allege prejudice, and we find none.

[3] Issues 2 and 3 are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

On 25 December 2022, CN and Appellant attended a Christmas gathering with other members of their unit. MP did not attend because he was on leave. CN became intoxicated at the gathering. Later in the evening, CN was walked home by another Airman because she was drunk. When she arrived, she got into bed and called MP. Shortly thereafter, she heard a knock on the door. She told her boyfriend that someone was at the door and that she had to go. It was Appellant. Appellant did not say anything but entered the room. CN was confused to see Appellant as she did not invite him over. She sat back down on the bed and texted a friend, KG, "I think I need help." Appellant proceeded to sit on the bed and started kissing CN. She stated, "This isn't right. Like, I have a boyfriend." She told Appellant, "No." She testified that she was in fear of Appellant and did not stop him because she was scared. She turned her head away as Appellant proceeded to take her underwear off and penetrate her. Appellant asked her if it was "okay" and CN said, "No." Appellant continued. When he was done, CN started crying. CN's friend KG arrived and saw Appellant still in the bed with CN crying. When Appellant went to the bathroom, CN called MP and told him, "I think I just got raped." She hung up when Appellant came back in the room. Appellant dressed quickly and left the room.

Over the next several hours, CN made several statements to other individuals about what Appellant did to her. She also participated in a sexual assault forensic examination. MP told her that if she did not report the incident, he would. CN reported the assault to one of her supervising noncommissioned officers and the Air Force Office of Special Investigations.

On 14 March 2025, Appellant signed a declaration relating to his trial and the performance of his trial defense counsel. In the declaration, Appellant asserted that he provided the names of individuals that they should contact. He states that he provided names, contact information and additional "content" relating to what that witness could provide for the case.

Appellant asserted that he told his counsel about a potential witness, ML. He stated that ML would have testified about a conversation he had with MP and could speak to a potentially helpful comment CN made to MP. Specifically, ML would have testified that MP told him that during an argument between CN and MP, CN told MP that she had more feelings for Appellant than MP.

ML provided a declaration in which he stated that he would have provided testimony consistent with that asserted in Appellant's declaration. ML asserts that he was not contacted by Appellant's counsel.

Appellant further asserted that he provided his counsel the name and contact information for another potential witness, XL. XL also provided a posttrial declaration. In his declaration, XL stated that he could have testified about a conversation that he had with CN where she said she felt bad for

making the report against Appellant and that she would not have reported him but for the pressure put on her by her boyfriend, MP.

Appellant also stated in his declaration that he provided his trial defense counsel names of individuals who had an opinion regarding CN's character for untruthfulness. He asserted that he provided several names and contact information for each. According to Appellant, none of those witnesses were called to testify at trial.

Finally, Appellant stated in his declaration that he was told that there was security footage outside of CN's dorm room. He averred, "As far as I am aware, the video footage was never requested by my attorneys, it was not provided by the Government, nor was it presented at trial."

In response to Appellant's allegation of ineffective assistance of counsel, we ordered Appellant's trial defense counsel to provide declarations regarding the allegations and their performance. Concerning ML's potential testimony, trial defense counsel state that Appellant's proffer provided to them pretrial is substantially different than what he asserted in his declaration post-trial. They evaluated the cost and benefit of calling ML and decided that presenting his testimony "could have opened the door to a devastating rebuttal case for the [G]overnment."

Regarding XL as a witness, after interviewing him, trial defense counsel determined that the testimony about CN's feelings was not helpful. They knew already they would be able to introduce evidence that CN had some reluctance to testify and some regret about making the report through cross-examination of CN and MP. They did, however, receive and present in the presentencing proceedings a character letter from XL.

With respect to Appellant's allegation that there was security footage outside of CN's room and that it was never requested, Appellant's counsel stated that they requested this footage from the Government, and in response trial counsel advised them that no video recordings of that nature existed.

## II. DISCUSSION

### A. Law

The Sixth Amendment guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence as stated in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citation omitted). We review allegations of

ineffective assistance de novo. *United States v. Palik*, 84 M.J. 284, 288 (C.A.A.F. 2024) (citing *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007)).

We utilize the following three-part test to determine whether the presumption of competence has been overcome: (1) are the appellant's allegations true, and if so, "is there a reasonable explanation for counsel's actions;" (2) if the allegations are true, did trial defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers;" and (3) if trial defense counsel were deficient, is there "a reasonable probability that, absent the errors," there would have been a different result? *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (alteration and omission in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

The burden is on the appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted). "[C]ourts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)) (additional citation omitted). We will not second-guess reasonable strategic or tactical decisions by trial defense counsel. *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009). "Where . . . an appellant attacks the trial strategy or tactics of the defense counsel, the appellant must show specific defects in counsel's performance that were 'unreasonable under prevailing professional norms.'" *Id.* (quoting *United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006)).

With respect to prejudice, a "reasonable probability" of a different result is "a probability sufficient to undermine confidence in the outcome" of the trial. *Datavs*, 71 M.J. at 424 (quoting *Strickland*, 466 U.S. at 694) (additional citation omitted).

In determining whether to grant a post-trial hearing to resolve a factual matter pursuant to Article 66(f)(3), UCMJ, 10 U.S.C. § 866(f)(3), and *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967) (per curiam), we are guided by the standard enunciated in *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). Courts of Criminal Appeals do not "decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *Ginn*, 47 M.J. at 243. Instead, we employ the principles for determining whether a *DuBay* hearing is appropriate. *United States v. Sales*, 56 M.J. 255, 258 (C.A.A.F. 2002) (citing *Ginn*, 47 M.J. at 248).

"If it is easier to dispose of an [ineffectiveness of counsel] claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

**B. Analysis**

As a preliminary matter, while we note some contradictions and inconsistencies between Appellant's declaration, the declarations submitted from ML and XL, and those of his trial defense counsel, we need not order a post-trial hearing to resolve those factual matters. We resolve this allegation of trial error presuming, without deciding, where there are factual disputes, the facts were as set forth in Appellant's and his supporting witnesses' declarations. *Ginn*, 47 M.J. at 248. Consistent with the United States Supreme Court's guidance, as it is easier here to resolve this issue by evaluating prejudice, we do so and find Appellant has failed meet his burden to show that the result of the proceeding would have been different.

Appellant argues that he was denied effective assistance of counsel in two ways: first, when his counsel failed to conduct an adequate pretrial investigation; and second, when they failed to present favorable evidence at trial. This argument primarily centers on the potential testimony of ML and XL. We note that ML's proffered testimony would not have been admissible as it is excluded by the hearsay rule. *See* Mil. R. Evid. 801. Thus, that this testimony was not offered had no reasonable probability of a different result as it would not have been admitted.

XL's testimony likely faces the same exclusion. In the event that it was admitted as some exception to the hearsay rule, we are confident the military judge sitting as the findings authority could see multiple ways to interpret this evidence, some inculpatory and some exculpatory. In any case, we are confident that if this testimony was admitted, there still was not a reasonable probability of a different result.

Appellant alleged that he was asked by his trial defense counsel to provide names and contact information for individuals who have had an opinion about CN's character for untruthfulness and that none were called to testify. ML stated that he would have said that CN had a character for untruthfulness. Appellant's declarations do not make clear whether ML was one of the individuals originally provided to his counsel as having an opinion of CN's character for untruthfulness. Regardless, we are confident, evaluating the trial record, which included a detailed and lengthy cross-examination of CN, that there was not a reasonable probability of a different result in this case. The testimony presented from multiple individuals of the near immediate and ongoing reactions of CN would have eclipsed the general opinions of CN's character for untruthfulness from individuals uninvolved in the circumstances surrounding the offense.

Viewing the entirety of the case in light of Appellant's allegations of ineffective assistance of counsel, we are convinced that there is not a "reasonable

probability" of a different result. *Datavs*, 71 M.J. at 424. Thus, Appellant is not entitled to relief.

### III. CONCLUSION

The findings as entered are correct in law. Article 66(d), UCMJ, 10 U.S.C. § 866(d), *Manual for Courts-Martial, United States* (2024 ed.). In addition, the sentence is correct in law and fact, and no error materially prejudicial to the substantial rights of the Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court